ALFRED J. TYRRELL, Respondent, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Appellant.

1. PUBLIC OFFICERS — COMPENSATION FOR SERVICES RENDERED ON SUNDAY. A public officer, who receives an annual salary for his services, cannot recover extra compensation for services rendered on Sunday, unless some statute allows it.

2. CONSTRUCTION OF STATUTES — PUNCTUATION. The punctuation of the statutes of this state is of material aid in learning the intention of the legislature and, while subordinate to the text and never allowed to control its plain meaning, may be resorted to when the meaning is not plain.

3. NEW YORK CITY — COMPENSATION OF EMPLOYEES IN DEPARTMENT OF STREET CLEANING. The clause, " and extra pay for work on Sundays," in the section of chapter 368 of the Laws of 1894 which authorizes the board of estimate and apportionment of the city of New York to fix, within specified limits, the annual salaries and compensations of the members of the uniformed force of the department of street cleaning, applies to the hostlers only, and does not authorize the allowance of such pay to any other member of the uniformed force.

    *Tyrrell* v. *The Mayor*, 34 App. Div. 334, reversed.

(Argued May 11, 1899; decided June 6, 1899.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered November 21, 1898, reversing a judgment entered upon the decision of the court on a trial without a jury.

This action was brought to recover extra compensation for services rendered by the plaintiff for the defendant on the

forty-seven Sundays which elapsed between April 26th, 1894, and March 22d, 1895. During this period the plaintiff held the position of section foreman in the street cleaning department of the city of New York, by regular appointment, at a salary of $1,000 a year, at which rate he has been paid for the whole of the said term of his employment. The trial judge found " that the plaintiff performed certain work and rendered certain services on Sundays during that time as section foreman for which he has received no additional compensation." As a conclusion of law he found " that chapter 368 of the Laws of 1894, which provides for extra pay to hostlers for Sunday work, manifests an intention on the part of the legislature to exclude other employees from receiving additional compensation for Sunday work," and " that since the right of the plaintiff to recover a verdict for the said Sunday work rests entirely upon the statute above cited, the defendants should have judgment in their favor upon the merits." The judgment entered on this decision was reversed by the Appellate Division, and thereupon the defendant appealed to this court.

*John Whalen, Corporation Counsel* (*Theodore Connoly* and *William B. Crowell* of counsel), for appellant. The intention of the legislature is in accordance with the punctuation of the act, and should prevail. (*McCormack* v. *Mayor, etc.*, 14 Misc. Rep. 272; Endlich on Interp. of Stat. § 61.) The evident intent shown in the act supports the contention of the defendant. (*McCormack* v. *Mayor, etc.*, 14 Misc. Rep. 272.)

*John W. Weed* for respondent. Punctuation is of the most meagre importance in the construction of statutes, and is never permitted to control any intention which can be gathered either from the act itself or from the circumstances which surrounded its enactment. (*Arcularius* v. *Geisanhainer*, 3 Bradf. 64; *Arcularius* v. *Sweet*, 25 Barb. 406; *Ewing* v. *Barnet*, 11 Pet. 54; *Sanford* v. *Raikes*, 1 Merivale, 650; *Matter of Denny*, 8 Irish Eq. 427; *Hammock* v.

*Farmers' Co.*, 105 U. S. 77; *Morrill* v. *State*, 38 Wis. 428; *Archer* v. *Ellison*, 28 S. C. 238; *Gyger's Estate*, 65 Penn. St. 311; *Shriedly* v. *State*, 23 Ohio St. 130.) The extra pay for work on Sunday is granted by statute, and, even though the board of apportionment failed to fix the amount of the compensation, the plaintiff is entitled to recover remuneration for his labor. (*Kip* v. *City of Buffalo*, 123 N. Y. 152; *P. J. W. Co.* v. *Port Jervis*, 71 Hun, 66.) It is to be presumed that ample appropriations were made, both in the years 1894 and 1895, to compensate the plaintiff for his services rendered on Sundays. (*Lewis* v. *Mayor, etc.*, 6 Hun, 241.)

Vann, J. This appeal brings before us for construction a section of the defendant's charter, which, so far as material to this controversy, is as follows: "The annual salaries and compensations of the members of the uniformed force of the department of street cleaning shall be fixed by the board of estimate and apportionment and shall not exceed the following: Of the general superintendent, three thousand dollars; of the assistant superintendent, two thousand five hundred dollars; of the superintendent of stables, two thousand dollars; of the master mechanic, one thousand eight hundred dollars; of the superintendent of final disposition, two thousand dollars; of the assistant superintendent of final disposition, one thousand five hundred dollars; of the district superintendents, one thousand eight hundred dollars each; of the time collectors, one thousand two hundred dollars each; *of the section foremen, one thousand dollars each;* of the dump inspectors, one thousand dollars each; of the assistant dump inspectors, nine hundred dollars each; of the tug and scow inspectors, one thousand dollars each; of the dump boardmen, seven hundred and twenty dollars each; of the sweepers, seven hundred and twenty dollars each; of the drivers, seven hundred and twenty dollars each; of the stable foremen, one thousand two hundred dollars each; of the assistant stable foremen, nine hundred dollars each; *of the hostlers, seven hundred and twenty dollars each, and extra pay for work on*

31

*Sundays.* The members of the department of street cleaning shall be employed at all such times and during such hours and upon such duties as the commissioner of street cleaning shall direct, for the purpose of an effective performance of the work devolving upon said department." (L. 1882, ch. 410, § 704; L. 1892, ch. 269, § 704a; L. 1894, ch. 368, § 704a.)

The plaintiff claims that the words " extra pay for work on Sundays " apply to all the officers and employees named in that part of the section quoted above, while the defendant claims that those words apply to hostlers only. The position of the plaintiff has been sustained by three of the learned justices of the Appellate Division, while the trial judge and two of the justices of the Appellate Division sustained the position of the defendant.

A public officer, who receives an annual salary for his services cannot recover extra compensation for services rendered on Sunday, unless some statute allows it. (*Palmer* v. *Mayor, etc.,* 2 Sand. 318 ; *Watts* v. *Van Ness,* 1 Hill, 76.) If a statute, which appropriates or authorizes the appropriation of money, for the payment of a salary to a public officer or employee, is indefinite, so that it is uncertain whether the legislature intended to devote a larger or a smaller sum to that purpose, the doubt should be resolved by adopting the smaller amount, as the interest of the public, other things being equal, is superior to that of an individual. If the expression relating to extra pay is capable of being satisfied in more ways than one, resort to this principle would settle the question by sustaining the appeal of the defendant.

The punctuation of this statute is of material aid in learning the intention of the legislature. While an act of parliament is enacted as read and the original rolls contain no marks of punctuation, a statute of this state is enacted as read and printed, so that the punctuation is a part of the act as passed and appears in the roll when filed with the secretary of state. The Constitution provides that, except in a case of necessity, formally certified by the governor, every bill must

be printed "in its final form" and placed upon the desks of members of the legislature at least three days prior to its passage, and upon the final reading no amendment is allowed. (Const. art. 3, § 15.)

The punctuation, however, is subordinate to the text and is never allowed to control its plain meaning, but when the meaning is not plain, resort may be had to those marks, which for centuries have been in common use to divide writings into sentences, and sentences into paragraphs and clauses, in order to make the author's meaning clear. The sentence under consideration contains more than two hundred words, divided into nineteen clauses. The first clause, separated from the rest by a colon, is general, and applies the command of the legislature to all that follow. The rest of the sentence consists of eighteen clauses, each separated from and made independent of the others by an intervening semicolon. While each must be read in connection with said general command, neither need be read in connection with any other part of the sentence. Each clause contains a comma, separating the position named from the salary belonging to it, and is complete in itself, except that it depends for a part of its meaning upon the primary command with which the sentence opens. The words relating to extra pay are not separated from the remaining words of the clause by a semicolon, as would be expected if they applied to the preceding clauses, but by a comma, which indicates an intention to limit their application to the clause in which they appear  This clear system of punctuation forbids, as we think, that the last words of the last clause, viz., "and extra pay for work on Sundays," should be read as a part of each of the other clauses except the first, which is obviously general in its application. The effect of the punctuation is the same as if the sentence was divided into eighteen independent sentences, with the first clause a part of each.

The legislature did not mean that the general superintendent should receive three thousand dollars a year "and extra pay for work on Sundays," or that the master mechanic and others, in addition to a fixed annual salary, should receive extra pay

for work, occasionally, though not regularly, done on Sunday, but that the hostlers, who are expected to work every day, should receive extra compensation for Sunday work, done regularly as a part of their weekly duties.   There was a reason for this distinction, which first appeared in the amendment of 1894, for the legislature is presumed to have known that, according to the laws of nature, the horses should be fed and cared for every day, while the cleaning of the streets would require Sunday work only once in a while, when special circumstances made it necessary, and the commissioner saw fit to call the men out.   (*McCormack* v. *Mayor, etc.,* 14 Misc. Rep. 272, 275.)   Moreover, the legislature would not be apt to hold out the temptation to do unnecessary work on Sunday, in violation of the general policy of the state, so as to increase the annual salary of all the officers and employees of the department. (Penal Code, § 263 ; 1 R. S. 675.)   Thus " the law as it previously existed and the necessity and probable object of the change," indicate the same intention as the punctuation. (*Donaldson* v. *Wood,* 22 Wend. 395, 397.)

We thus reach the conclusion, which is confirmed by repeated legislative declarations, that the clause in question applies to the hostlers only, and that the plaintiff is not entitled to recover.   (L. 1897, ch. 378, § 536 ; L. 1899, ch. 261.) This conclusion makes it unnecessary for us to consider the question, so fully discussed below, whether the board of estimate and apportionment had allowed, or attempted to allow, the plaintiff any sum for Sunday work.

The order appealed from should be reversed and the judgment entered upon the decision of the trial court affirmed, with costs.

All concur.

Order reversed, etc.