## STATE v. J. E. C. BELL.

(Filed 8 November, 1922.)

**1. Criminal Law—General Verdict—Counts in the Indictment.**

A general verdict of guilty upon several counts in a bill of indictment will be interpreted to apply to the one alone, if only one, that is supported by the evidence, and to which the charge of the court was directed, and to which the case has been confined upon the trial; and not to such others that would violate the theory upon which the criminal action was tried, and was unsupported by the evidence and ignored by the charge.

**2. Statutes—Interpretation—Courts.**

The courts will observe the separation of the legislative and supreme judicial powers of the Government by the State Constitution, and will only interpret a statute to ascertain and give effect to the intention of the Legislature, or, if such intention cannot be discovered, to give the statute such reasonable constructions as may be consistent with the general rules of interpretation, which the Legislature will be presumed to have recognized in connection with and as a part of the statute being construed; and to ascertain this legislative purpose, the spirit and reason of the law will prevail over its letter, especially where a literal construction would work an obvious injustice.

**3. Same—Wife—Children—Divorce.**

Within the intent and meaning of C. S., 4447, the willful abandonment by the father of his children of the marriage is made a separate offense of like degree with that of his willful abandonment of his wife; and his duty to the children is not lessened by the fact that a decree of absolute divorcement has been obtained, the obligation to support his own children continuing after the marriage relation between him and his wife has been severed by the law.

**4. Same—Punctuation.**

Punctuation may now be considered as an aid in construing the purpose or intent of the Legislature in enacting a statute, especially when brought forward from time to time by legislative reënactment; and *it is held* that the placing of a comma after the words "such wife," in C. S., 4447, with regard to the husband's abandonment, evinces the legislative intent to create two offenses, the one, the willful abandonment of the wife, and *the other, the willful abandonment by the father of his children of the* marriage; especially when construed in connection with C. S., 4460, making it a misdemeanor for the husband to "willfully neglect to provide adequate support for his wife and the child or children which he has begotten by her."

**5. Statutes—Interpretation—Captions—Reënactment.**

While the caption may not be considered in the interpretation of a statute when in conflict with the terms expressed in the body of the act, it will be given greater significance in its interpretation when the original act has been amended and the caption accordingly changed, and thus recognized by the Legislature in bringing the act with its amendment forward in the codified law; and this rule applies to the interpretation of C. S., 4447, as to the offense of the willful abandonment by the husband of his wife or children, fortified by C. S., 4449, authorizing the trial judge to provide for the support of the deserted wife, or children, or both.

**6. Same—Husband and Wife—Descriptio Personæ—Parent and Child.**

C. S., 4449, uses the word "husband" as *descriptio personæ*, in his relation to the child of the marriage to whom his duty of support continues after a decree of divorcement has been entered; and does not confine the offense to the willful abandonment of the wife.

**7. Statutes—Abandonment of Children—Statute of Limitations—Support —Subsequent Promise.**

The promise of the father to support his children and his making gifts to them is sufficient to repel the bar of the two-year statute of limitations, whether he was living in the same home with them or otherwise, in proceedings under our criminal statute for his willfully abandoning them. C. S., 4447. ·

CLARK, C. J., concurring; STACY, J., dissenting; WALKER, J., concurs in dissenting opinion of STACY, J.

APPEAL by defendant from *Allen, J.,* at March Term, 1922, of VANCE. On 20 December, 1921, Mabel K. Bell made an affidavit before a justice of the peace of Vance County that the defendant, her divorced husband, had willfully abandoned .and failed and refused to support his four children, of the age of four, six, eight, and eleven years, respectively; and thereupon she obtained a warrant under which the defendant was arrested and afterward bound to the Superior Court. At the March Term, 1922, the grand jury returned a true bill containing three counts charging the defendant (1) with the willful abandonment of his children without providing for them adequate support; (2) with the willful abandonment of his wife without providing ade-

quate support for her and the children; and (3) with willfully failing to provide adequate support for her and the children while he was living with his wife. The bill is endorsed "Abandonment of Children." At the same term the case was called for trial, and the State's witnesses were examined; the defendant declined to offer any evidence, and relied upon the statute of limitations. Following is a recapitulation of so much of the evidence as is necessary to an understanding of the controversy. At the March Term, 1921, Mabel Bell was granted a decree divorcing her from the defendant. On or about 1 June, 1919, the defendant, without just cause, abandoned her and the children without providing for them an adequate support, and afterward admitted that he had not taken care of the children, and would not care for them. The wife inherited an estate worth about $20,000, on which she had placed a $10,000 mortgage to secure two bonding companies who were prosecuting the defendant; a part of it she had spent for the children. At the time of the trial she was getting practically nothing from the estate, and her income was not sufficient for the support of the children. On 1 December, 1920, the defendant and his wife executed to R. S. McCoin a deed of trust on her real and personal property for the purpose of paying her debts and taxes, and collecting dividends, etc., and turning over to her a stated sum every month for the support of herself and the children.

In the fall of 1921 one of the children was sick in the hospital and the defendant told the trustee that he would do what he could for the children, and promised to send $200 and certain tax money claimed to be due him, but that he would not contribute to the support of his divorced wife. At the Christmas of 1920 the defendant gave the children a pony, and at the Christmas of 1921 he sent the oldest a book, the youngest a doll, and a basket to each of the others.

The defendant's motion for nonsuit was denied, and his Honor instructed the jury to return a verdict of guilty if they believed all the evidence, and were satisfied beyond a reasonable doubt that the defendant furnished the children with presents testified to and offered or agreed with the trustee to furnish means for supporting them, and after so doing and agreeing, if it was within two years, he willfully failed to furnish them adequate support. There was a general verdict of guilty, and thereupon his Honor adjudged that the defendant should pay into the court $50 a month for the support of his children. The defendant appealed.

*Attorney-General Manning, Assistant Attorney-General Nash, and T. M. Pittman for the State.*
*T. T. Hicks & Son for defendant.*

ADAMS, J. The statutes making abandonment a misdemeanor were enacted in 1869. Public Laws 1868-69, ch. 209. The first section of the original act is now section 4447 of the Consolidated Statutes, the second is section 4450, and the third, section 4448. Section 4449 was enacted in 1917. The State contends that the defendant is guilty of a breach of the section first named above (4447), and concedes that if he is not, he should be discharged. The prosecution further admits that the defendant cannot be convicted if his guilt is legally dependent on his abandonment of his wife, because he abandoned her in June, 1919, more than two years before the warrant was issued or the bill of indictment was returned, and has not renewed as to her his marital obligation. Indeed, at the March Term, 1921, of the Superior Court, she obtained a decree dissolving the bonds of matrimony. The appeal, therefore, presents these two questions:

1. Is a former husband, from whom his wife (now living) has procured an absolute divorce, subject to prosecution under section 4447 for the subsequent abandonment of their children without providing such children an adequate support?

2. If so, is the prosecution barred by the statute of limitations?

With respect to the first interrogatory, the defendant's contention, concisely stated, is this: The statute (section 4447) contemplates the husband's abandonment of the wife without providing adequate support for her and their children, if any, and excludes the interpretation that the word "abandonment" applies equally to the children. In other words, the defendant contends that he is not guilty of a breach of this statute, even if it be granted that he willfully abandoned the children begotten of his wife without providing for their adequate support. There is, in our opinion, no sound reason for this limited construction. Since conditions growing out of the domestic relation exact of the wife the more immediate association, care, nurture, and tuition of the child, it has popularly been conceived that the abandonment of the wife involves the abandonment of the children. Doubtless the decisions are in part responsible for this conception—for in all the cases in which the husband was convicted of abandonment without providing support for the wife and the child they were ostensibly living together; and, in fact, he abandoned his child when he abandoned his wife. Not so here. The husband and the wife are divorced.

The jury returned a general verdict of guilty. It has repeatedly been held that where there are several counts in an indictment, and the evidence applies to one count only, a general verdict will be presumed to have been rendered on the count to which the evidence applies. S. v. Long, 52 N. C., 24; S. v. May, 132 N. C., 1021; S. v. Gregory, 153 N. C., 646; S. v. Strange, 183 N. C., 775. From his Honor's instruc-

tion to the jury, and from the judgment, which makes provision for the children only, we may legitimately infer that the prosecution was confined to the count which charges the defendant with the willful abandonment of the children, or, at any rate, that his Honor concluded that the willful abandonment of the children without providing adequate support for them—regardless of the legal status of the wife—was a breach of the statute.    The question first stated above, then, may be reduced to this: Does the first count in the indictment charge a criminal offense?    The statute is as follows:  "If any husband shall willfully abandon his wife without providing adequate support for such wife, and the children which he may have begotten upon her, he shall be guilty of a misdemeanor."

We have decided, in several cases in which the husband was indicted for abandonment and failure to provide support, that both these elements must be established, and we adhere to these precedents.  But the former decisions of the Court do not determine the controversy, for the question in this appeal has not heretofore been presented for consideration.    We must resort, therefore, to the established principles of statutory construction.    Scrupulously observing the constitutional separation of the legislative and the supreme judicial powers of the government, we adhere to the fundamental principle that it is the duty of the Court, not to make the law, but to expound it, and to that end to ascertain and give effect to the intention of the Legislature, or if the legislative intent cannot be discovered, to give the statute such reasonable construction as may be consistent with the general principles of law. This is reasonable, for the courts impute to the Legislature, as a coordinate branch of the government, knowledge of the settled principles and maxims of statutory construction, and assume that statutes are enacted with a view to their interpretation according to such maxims and principles as an effective means of assuring certainty and uniformity in the administration of the law.    In our endeavor to ascertain the purpose of the statute, we should also have due regard to the rule that the spirit and reason of the law shall prevail over its letter, especially where a literal construction would work an obvious injustice. *Herring v. Dixon,* 122 N. C., 425; *Wilson v. Markley,* 133 N. C., 616; *Fortune v. Comrs.,* 140 N. C., 322; *McLeod v. Comrs.,* 148 N. C., 79; 25 R. C. L., 955 *et seq.;* 36 Cyc., 1102 *et seq.*

What, then, was the intention of the Legislature in enacting this statute?    The obvious purpose was to punish the husband for a willful failure to perform certain duties enjoined by the marriage contract— the duty to live with and to provide support for his wife and their children.    Accordingly, his willful abandonment of his children without providing for them adequate support is no less a misdemeanor than his

45—184

willful abandonment of his wife without providing adequate support for her. If there be no children, his willful desertion and neglect of his wife is punishable under the statute. *S. v. Toney,* 162 N. C., 635. If there be children and no wife—if she be dead or divorced—his willful abandonment of them without providing for their support is none the less criminal. This, we think, is the rational interpretation. It is in accord not only with the spirit and reason of the law, but with the phraseology and punctuation. Punctuation, we admit, is not an infallible standard of construction; indeed, some courts have held that it should be disregarded; but we apprehend that their conclusion was based upon the old English doctrine which was announced as a necessary consequence of the custom of enacting and enrolling laws with no punctuation whatever. But this is not the prevailing doctrine. In *Taylor v. Town,* 10 A. & E. Anno. Cas., 1082, it is said: "There is no reason why punctuation, which is intended to and does assist in making clear and plain all things else in the English language, should be rejected in the case of the interpretation of statutes. *Cessante ratione legis cessat ipsa lex.*" *Ewing v. Burnet,* 11 Pet. (U. S.), 41; *Albright v. Payne,* 43 Ohio St., 8; *Savings Ins. v. Newark,* 63 N. J. L., 547; *Comrs. v. Ellwood,* 193 Ill., 304; *Tyrrell v. New York,* 159 N. Y., 239. Regard should be given to the difference, which, no doubt, was intentional, between the punctuation in the first and the punctuation in the second section of the original act. Section 2 (C. S., 4450) was as follows: "That if any husband, while living with his wife, shall willfully neglect to provide adequate support for such wife and the child or children which he has begotten upon her, he shall be guilty of a misdemeanor." It is important to note the absence of a comma after the words "for such wife." In consequence, the section was deemed to denounce only one offense, namely, the willful neglect of the wife *and* the child. Section 1 (C. S., 4447) of the original act provides: "That if any husband shall willfully abandon his wife without providing adequate support for such wife, and the child and children which he has begotten upon her (such wife), he shall be deemed guilty of a misdemeanor." Note the comma after the words "wife" and "her." We regard it manifest that the first section of the original act (4447) was intended to create two offenses (willful abandonment of the wife and failure to support her, and willful abandonment of their children and failure to support them), and the second (4450) was subsequently amended and coördinated with the former by substituting "or" for "and," and thereby likewise creating two offenses. The Code, sec. 972. The words "while living with his wife" are significant chiefly as repelling the notion of a complete or partial severance of the marriage relation, and for the reason before stated, imply that the derelict hus-

band is living also with his children. So the two sections, construed together, are intended to punish the husband for willful failure to support the wife or children, if living with them, and for his willful abandonment of the wife or children and failure to provide adequate support.

The punctuation in section 4447 has been preserved in Battle's Revisal, in The Code, the Revisal of 1905, and in the Consolidated Statutes. If the phrase relating to the wife and children had not been set apart by commas as a separate and distinct provision, this section, like section two, might reasonably have been construed as creating one offense, and would have required an amendment similar to that of section two. It is hardly conceivable that the Legislature intended by the amendment to create two offenses in the second section if in the first there is only one—to subject the husband to prosecution if, while living with his wife, he willfully neglects to provide for their children, and to declare him exempt if he willfully abandons them and neglects to provide for their support. In our opinion, if the rule of strict construction be applied, the statute means just this: If any husband shall willfully abandon his wife without providing adequate support for such wife, he shall be guilty of a misdemeanor, and if he shall willfully abandon the children which he may have begotten upon her without providing adequate support for such children, he shall be guilty of a misdemeanor. This construction harmonizes the two statutes and credits the Legislature with the righteous intention of preserving, so far as practicable, the unity of the domestic relation.

True, the caption of the act of 1868-69 is "An act to protect married women from the willful abandonment or neglect of their husbands"; but to the suggestion that the caption may be invoked in explanation of the language of the statute, there is in this case more than one answer. In the first place, the language of the title is not permitted to control expressions in the body of a statute that conflict with it. *Blue v. McDuffie*, 44 N. C., 132; *Randall v. R. R.*, 104 N. C., 413; *S. c.*, 107 N. C., 750; *S. v. Patterson*, 134 N. C., 614. In the next place, if it be granted that the title of the original act should be considered, why is it not equally clear that the title of the reënacted statute should be considered? We readily admit that the compiler's preparation of a heading for a statute in no way affects the construction of the language "when its meaning is perfectly obvious." *Cram v. Cram*, 116 N. C., 293. But where in the course of half a century a statute has been reënacted time after time, and the first title is changed and the reënacted statute thereafter bears substantially the amended caption throughout, we are not at liberty to assume that such caption indicates merely the compiler's construction and excludes that of the Legislature. The first reënactment

was in 1874 (Battle's Rev., ch. 32, sec. 119, and ch. 121, sec. 1), under the title, "Husband guilty of a misdemeanor for abandoning family"; the second was in 1883 (The Code, vol. 1, ch. 25, sec. 790, and vol. 2, ch. 67, sec. 3866 *et seq.*), under the title, "Abandonment of wife and children by husband"; the third was in 1905 (Revisal of 1905, vol. 2, ch. 81, sec. 3355, and ch. 121, sec. 5463), under the title, "Abandonment ·of family by husband"; and the fourth, in 1919 (C. S., vol. 1, ch. 82, sec. 4447, and vol. 2, ch. 135, sec. 8107), under the title, "Abandonment of family by husband." If it be conceded that each of these titles was prepared by those who compiled the statutes and represented their personal interpretation, it is hardly reasonable to inhibit the conclusion that such interpretation has received the repeated approval of the Legislature. This deduction is fortified by the fact that the Legislature of 1917 seems to have approved it in authorizing the trial judge to provide for the support of the *deserted* wife *or* children, *or* both. C. S., 4449.

We are not disposed to adopt the argument that the offense is directed against the "husband" and not against the father. The husband and the father is one, and the word used in the statute is intended simply to identify the person—*descriptio personæ*—and not to restrict its significance to the relation between the husband and the wife to the exclusion of that between the father and the child. The "husband," if there be children, sustains toward his family the dual relation of husband and father; he may be referred to as the one, but he is also the other. When the marriage relation is severed, whether by death or divorce, the husband is released from his previous obligation to his wife, but not from his obligation to his children. Here the decree dissolving the marriage contract left intact and unimpaired the defendant's legal obligation to maintain his children. If he was subject to prosecution before the divorce, the decree does not cover him with the mantle of immunity. *Walker v. Crowder,* 37 N. C., 487; *Haglar v. McCombs,* 66 N. C., 351; *Sanders v. Sanders,* 167 N. C., 319; 19 C. J., 353 (813). Even after the death or the divorce of the wife the husband is usually referred to as the surviving husband or the divorced husband, just as the "husband of a daughter" includes the husband of a deceased daughter. *In re Ray's Estate,* 35 N. Y. Sup., 481.

The next question is whether the prosecution is barred by the statute of limitations. More than two years elapsed between the abandonment in June, 1919, and the institution of the action in December, 1921. If there were nothing else in the record, we should be compelled to hold that the prosecution could not be maintained. C. S., 4512. But the evidence shows that within two years next preceding the commencement of the prosecution the defendant recognized as to his children the restored

relation, and voluntarily reassumed his obligation to maintain them (his civil liability was never suspended) by bestowing gifts, not of food or clothing, it is true, and by his promise to the trustee appointed by him and his wife (supported by the consideration of a legal duty) to provide for them a substantial amount of money. Thereafter, and within two years prior to the prosecution he again abandoned his children and withheld all support. In *S. v. Hannon,* 168 N. C., 215, the trial judge instructed the jury that a new promise to provide support would repel the bar of the statute and the instruction was sustained. In that case, besides making the promise, defendant paid his wife the sum of $5; and while this circumstance is referred to in the opinion, it is not referred to in the judge's instruction to the jury. However, in the present case the value of the defendant's gifts, regardless of his promise, far exceeded this amount. In *S. v. Davis,* 79 N. C., 604, the Court said: "The parties [husband and wife] were together treating as to what should be their future relations. The wife proposed a complete restoration of their marriage relations, which the husband declined, but he agreed to support her, and did support her for two weeks, when he refused to support her any longer. *Being already separated,* this refusal completed the second offense." The test of a legal restoration. of the severed marital relation is not necessarily whether the delinquent husband and the abandoned child actually lived together after the abandonment, because the relation may be restored although they do not live in the same home. Here, as in the *Davis case, supra,* the father being still separated from his children, his refusal to support them after voluntarily reassuming the obligation that he had previously disowned, completes the second offense.

After a deliberate investigation of the record, we find no error. It is not our province to determine the culpable cause of the unfortunate separation of the wife and children from the husband and father. Ours should be the calm, judicial opinion, and our concern, the proper construction of the statute under consideration when tested by the approved canons of interpretation. With our conception of the purpose and intention of the Legislature, we cannot approve a construction of this statute which would make is possible for a man who is both husband and father willfully to abandon his wife, and after her death or divorce willfully to relinquish all concern for his children born of the marriage and commit them to the charity of the State without providing raiment for their comfort, food for their sustenance, training for their welfare, or shelter for their refuge and protection, and yet to retain immunity from guilt.

No error.

CLARK, C. J., concurring: C. S., 4447, provides: *"Abandonment of family by husband.* If any husband shall willfully abandon his wife without providing adequate support for such wife, and the children which he may have begotten upon her, he shall be guilty of a misdemeanor"; and C. S., 4449, provides: *"Order of support from husband's property or earnings.* Upon any conviction for abandonment, any judge or any recorder having jurisdiction thereof may, in his discretion, make such order as in his judgment will best provide for the support, as far as may be necessary, of the deserted wife *or children, or both,* from the property or labor of the defendant." In this case the evidence was uncontradicted that the defendant "abandoned, refused, and failed to support in any way his children, Josephine Bell, aged 4 years; Mabel Bell, aged 6 years; Ellen Bell, aged 8 years; and Mary Baxter Bell, aged 10 years, and has not contributed anything to their support since said date" (July, 1920). This was so expressed in the warrant which was sued out 30 December, 1921, and in the indictment, and the jury found the charge to be true.

The warrant sets out that on 30 December, 1921, Thomas L. Jones, justice of the peace of Vance County, issued his warrant as follows: "State v. J. E. C. Bell. Mabel K. Bell, being duly sworn, complains and says that at and in said county of Vance, in Henderson Township, on or about .... July, 1920, J. E. C. Bell, affiant's divorced husband, did unlawfully, willfully, and feloniously abandon, refuse, and fail to support in any way his children, Mary Baxter Bell, age 10 years; Ellen Bell, age 8 years; Mabel Bell, age 6 years, and Josephine Bell, age 4 years; and has not contributed anything to their said support since said date, contrary to the form of statute and against the peace and dignity of the State."

On 5 January, 1922, the defendant was arrested upon that warrant and was bound over to the Superior Court of Vance on 6 March, 1922. The indictment then found recites that on .... July, 1920, the defendant, J. E. C. Bell, "Unlawfully and willfully did abandon his children, viz.: Mary Baxter Bell, Ellen Bell, Mabel Bell, and Josephine Bell, without providing adequate support for said children, against the form of the statute in such case made and provided, and against the peace and dignity of the State." It is true there was a second count in the bill that the defendant had abandoned his wife without providing adequate support for such wife and children, but he was not tried or convicted on this count, and it appears from the warrant, and from the first count of the indictment, on which he was tried, that the defendant's wife had been divorced from him at the time the warrant and indictment were found.

The judge, in accordance with the provisions of section 4449, adjudged that "the defendant pay to the clerk of Vance Superior Court

the sum of $50 per month, beginning 1 April, 1922, until the further order of the court, to be applied to the maintenance of his infant children," and the costs.

.It does not appear that the defendant was without means, and presumably he was not, for it appears in the record that he has been sheriff of his county, but if he had been, it would have been (C. S., 4449) in the discretion of the judge to make such order for the support of the children "from the property or labor of the defendant," as it was imperatively the duty of the defendant to provide for them.

This statute does not prohibit this proceeding in favor of the children unless his wife has been included, especially is this so when he has no wife. The language of the statute is, "without providing adequate support for the wife and the children." When such proceedings have been taken out for nonsupport of a wife it has never been thought a defense that she had no children. Nor can it be reasonably construed that this proceeding cannot compel the defendant to aid in the support of his children because he has no wife. The rule should work both ways. The object is to enforce adequate support for the wife and children, and if there is no wife, the proceeding none the less will lie in favor of the children, and if there are no children, it still lies in favor of the wife. It is an immaterial circumstance whether the defendant has lost his wife by death, or by divorce, as in this case. The object of the statute is to secure support for the wife and children, or *for either*. The abandonment is only an aggravation of the offense. Any other construction would make the statute a nullity except in cases where the defendant has both wife and children.

In *S. v. Kerby,* 110 N. C., 558, it was held that it was intended to procure the support of the children as well as for the wife, and that the offense was complete when there was a failure to support the children only, though in that case the defendant had a wife at the time the offense was committed.

It was contended for the defendant that the offense of leaving these children without adequate support was barred by the statute of limitations; as if a statute could run against these four helpless little beings, for whose protection, with all others in like condition, the statute was provided. It is true it has been held in some decisions that abandonment was the act to be punished, and, therefore, the statute began to run from that time, and the defendant was protected by the lapse of two years. If there was any validity in that defense as to the wife, who was presumably of age, and whose acquiescence for two years might be a waiver, this certainly could not avail as against these four little girls from 2 to 8 years of age when first abandoned. The statute could not run against them.

But with all respect to the precedent, *S. v. Davis,* 79 N. C., 603, that held that the statute runs from the abandonment, it would seem that a reasonable construction of the intent of the Legislature, as evidenced by C. S., 4449, was not to punish the act of abandonment, for which no punishment is prescribed, but the intent was a judgment requiring the husband, or father, as the case might be, to furnish adequate support out of his estate, if he had any, and if not, by his labor, and that where there has been a failure to support, as in this case, within two years prior to the institution of this proceeding, the action is not barred, certainly not against minor children. They have had no day in court, and have had no opportunity.

In *S. v. Davis, supra,* it was held that this was not a continuing offense. But that was a case where the abandonment was of the wife only who might be presumed possibly to have waived prosecution by delay for two years; but even in that case the court was quick to say that if the husband subsequently made a promise within the two years to support the wife, the failure to perform such promise constituted a fresh abandonment and sustained the indictment found within two years after such failure. If that case is a precedent for the first proposition, it is equally so for the second.

In *S. v. Hannon,* 168 N. C., 216, where the husband had abandoned his wife something over three years before the bill found, but within two years he gave her $5 for her support and promised to return and to furnish a house for her, which he did not do, it was held sufficient breach of his marital duty to support an indictment upon the second promise. The Court said that "the promise of renewal of association on the part of the husband and payment of $5 towards her support would amount to a renewal of the obligation, and on a subsequent failure within the two years an indictment would lie," citing with approval *S. v. Davis,* 79 N. C., 603. In *S. v. Beam,* 181 N. C., 597, where there was a second abandonment, the Court held that the husband leaving the wife the second time without furnishing any support within two years was not barred by the statute of limitations.

If the statute of limitations could run against these little children (for the mother is not a party to this proceeding, and, indeed, the defendant had no wife when the warrant was sworn out or the indictment found), still, even in that view, this defendant cannot avail himself of the bar of the statute, for in this case the abandonment of the wife took place about 1 June, 1919, but afterwards, and within two years of the swearing out of the warrant in this case, on 30 December, 1921, the defendant executed a deed on 1 December, 1920, to R. S. McCoin, as trustee, jointly with his divorced wife, in which they both conveyed their interest in certain property to the trustee with authority to manage

the same, keep it in good condition, and out of the proceeds of said trust fund should pay $200 a month for the support of the divorced wife and the necessary expenses of the children and their schooling. This fund proved inadequate, and the children have been left without any support whatever.

The trustee, Mr. McCoin, also testified that in the fall of 1921, after he had been made trustee and found the fund insufficient, he met the defendant on the street and asked him to contribute something to the expenses of one of the children in the hospital. The defendant said he would do what he could for his children, adding that he was going to Raleigh and would see about a $200 over-payment which he had made in settling as sheriff his taxes with the State; that he would send that, and also would send him a list of parties whose taxes he had paid but had not collected, and that the trustee (McCoin) might collect that for the children. He also, within the two years, on Christmas, 1920, sent the children a pony for riding and several small presents.

The deed in trust, the promise to McCoin, trustee, and the sending of the pony and other articles were all done within two years prior to the beginning of this action and his subsequent total abandonment of his children without any support constitutes an offense, and in any view prevents the bar of the statute of limitations. *S. v. Davis, supra; S. v. Hannon, supra.*

His legal and moral duty was a sufficient consideration for the promise he made, within the two years, to McCoin to send check and other aid for the support of his little girls.

This Court held, in *Sanders v. Sanders,* 167 N. C., 319: "There can be no controversy that the father is under the legal as well as a moral duty to support his infant children. *Walker v. Crowder,* 37 N. C., 487," and whether they have property or not. *Haglar v. McCombs,* 66 N. C., 345.

The defendant did not put on any evidence to deny that he had left his four little girls, aged from 4 to 10, without any support whatever, neither for food, clothing, shelter, or schooling. But his counsel insists that he is protected from liability because when these children were still younger, i. e., 2 to 8 years of age, they had allowed two years to elapse without taking any steps to force him to provide for them. I do not think that this can be the law in North Carolina.

In 20 R. C. L., 622, sec. 30, it is said: "Correlative to the father's right to the custody, control, and earnings of his minor child is his duty to support such child. *This duty is recognized and discharged even by the higher orders of the animal world,* and it would seem to be prescribed as to the human father by the most elementary principles of civilization as well as of law. It was held in some early American

cases, supported by eminent English authority, that 'there is no legal obligation on a parent to maintain his child,' unless by force of some statute. But this doctrine, admitted to seem startling and opposed to the innate sense of justice by the court which gave to it its first American support, has been repudiated by the great majority of American courts"; and here follows a long list of decisions, the only case cited to the contrary being an early New Hampshire case.

The law is thus stated, 8 R. C. L., 307, sec. 332: "*The crime of nonsupport is a continuing one, as the duty to support is continuing,* and the breach of it may be stated as having occurred at the moment of desertion or *at any time during the continuance* of the willful neglect to support." Certainly where the failure to support is only as to the children, who at its commencement were from 2 to 8 years of age, and the husband, as in this case, renewed his promise to support them within the two years and has failed to comply, the statute of limitations cannot be a bar as to these children.

The verdict of the jury and the judgment of the court that the defendant pay $50 per month for the support of his four children was just and righteous altogether, and in accordance with the language as well as the clear intent of our statute.

Indeed, the single case that holds that neglect to support the children is "not a continuing duty," and hence acquiescence for 2 years by them is a- bar to any liability, should be overruled. In its very nature support is a "continuing duty." 8 R. C. L., 307. It is violated the very first day that the father fails to discharge it, and each succeeding day thereafter is an aggravation and not a defense. Under our rule as to the statute of limitations in misdemeanors, the defendant cannot be held guilty for acts of abandonment and nonsupport committed more than two years before proceedings began, but for those committed within two years. But if this is to be reversed, and by calling it "not a continuing offense" (for which there is no intimation in the statute), still the promise to McCoin and the gifts to the children, made within two years before this action was begun, deprives the defendant of relying upon the defense that he had also been guilty before the two years.

STACY, J., dissenting: I should be content with the judgment of the majority in this case if I did not feel that the present decision is violative of the rule of strict construction, as it relates to the interpretation of criminal statutes, and further, that it is in conflict with a number of our previous decisions. The duties of a husband are quite different from those of a father, and it would seem that a penal statute directed against the one ought not to be held to include the other, unless the

Legislature so declare. A man may be a husband and yet not a father; or, like J. E. C. Bell, he may be a father and not now a husband.

But it is stated in the opinion of the Court that the statute should be construed as if it contained other words than those incorporated therein, and then the observation is made that the conclusion reached is the rational and reasonable one. Maybe so; but to my mind this conviction cannot be sustained without giving a strained construction to a criminal statute, and further, by adding additional words thereto, by way of "judicial legislation." Both of these methods, however, seem to have been employed, in the instant case, in a manner and fashion satisfactory to a majority of the Court.

The present prosecution is based upon an indictment charging the defendant with willfully abandoning his wife without providing adequately for her support, and for the support of their four minor children, as condemned by C. S., 4447. There is also a count in the bill charging the defendant with a violation of C. S., 4450, in that, while living with his wife, he willfully neglected to provide adequate support for the children which he had begotten upon her. But as the evidence was not sufficient to support this latter charge, it need not be considered. *S. v. Kerby,* 110 N. C., 558. He was convicted under the first count.

In addition to the above, there was a third count in the bill to the effect that in July, 1920, the defendant "unlawfully and willfully did abandon his children, viz.: Mary Baxter Bell, Ellen Bell, Mabel Bell, and Josephine Bell, without providing adequate support for said children, against the form of the statute in such cases made and provided, and against the peace and dignity of the State." With respect to this charge, I am unable to find any statute in North Carolina making the alleged offense criminal, unless C. S., 4447, was intended to do so. The language of this statute is as follows: "If any husband shall willfully abandon his wife without providing adequate support for such wife, and the children which he may have begotten upon her, he shall be guilty of a misdemeanor." Here, it will be observed, two things are necessary to be shown, and they must concur in order to render the husband liable to indictment, to wit: (1) a willful abandonment of the wife; and (2) a failure to provide "adequate support for such wife, and the children which he may have begotten upon her." *S. v. Toney,* 162 N. C., 635. Of course, the offense may be committed where there are no children, but it would seem to be otherwise where there is no wife. The abandonment of the wife is the act of abandonment here condemned, and not that of the children. The statute provides that the charge may be preferred against any offending *husband,* not father. "If any husband shall willfully abandon his wife," etc., is the language used.

But it is said that a contrary meaning was intended, as appears from the caption of this section, which is as follows: "Abandonment of family by husband." Where the meaning of a statute is doubtful, its title may be called in aid of construction (*Freight Discrimination Cases,* 95 N. C., 434); but the caption cannot control when the meaning of the text is clear. *In re Chisholm's Will,* 176 N. C., 211, and cases there cited. Especially is this true where the headings of sections have been prepared by compilers and not by the Legislature itself. *Cram v. Cram,* 116 N. C., 288. Moreover, it does not appear that the instant caption imports a meaning contrary to the body of the text. The abandonment mentioned is to be by the "husband"; and a husband is a man who has a wife.

It was not an indictable offense at common law for a father to abandon his children, nor was it a crime for a husband to desert his wife. The basis of the entire prosecution we are now considering is purely statutory. 13 R. C. L., 1191. It was not known or recognized at the common law, and hence we must look to the enactments of the Legislature to determine the lawfulness or unlawfulness of the offense charged. 21 Cyc., 1611. A careful reading of the above section convinces me that this third count is not included within its terms. Furthermore, it is quite evident that such was not the purpose and intent of the lawmaking body. The provisions of C. S., 4450, would seem to indicate a different policy, or a contrary legislative intent. This section reads as follows: "If any husband, while living with his wife, shall willfully neglect to provide adequate support for such wife, or the children which he has begotten upon her, he shall be guilty of a misdemeanor."

It will be noted that, in one section, the willful abandonment of the wife without providing adequate support for such wife, and the children begotten upon her, is the offense condemned; while in the other, the willful neglect, while living with the wife, to provide adequate support for such wife *or* the children begotten upon her is made a misdemeanor. The two statutes are quite different, and, on a proper perusal, I think it is apparent that both were drawn with studied care and precision. Note, also, that C. S., 4449, by express terms, has no application unless and until there has been a conviction under the prior statute, and the same may be said of Public Laws 1921, ch. 103.

It may be stated, however, that the defendant was not prosecuted on this third count in the court below. The case was tried on another theory. The State offered evidence tending to show that in June, 1919, the defendant abandoned his wife without providing adequate support for her and their four minor children. The defendant offered no evidence, but contented himself with the plea that the prosecution was barred by the statute of limitations. This was the only question con-

sidered on the trial; and, of course, if the defendant had been tried on the third count in the bill, and it were valid, the plea of the statute of limitations could have availed him nothing under the facts of the instant case.

The offense charged under C. S., 4447, and of which the defendant was convicted, is a misdemeanor. It occurred on or about 1 June, 1919, according to the State's evidence. The defendant was arrested 5 January, 1922, and tried at the March Term, 1922, of Vance Superior Court. The only question presented for our consideration on this appeal is the validity of the defendant's plea of the two-year statute of limitations, C. S., 4512.

As early as 1878, in the case of *S. v. Davis,* 79 N. C., 603, the following was declared to be the law of this jurisdiction: "It is the act of abandonment and failure to support that constitute the offense. The first offense was in 1873, and is barred by the statute of limitations. It is not a continuing offense by reason of the continued separation; so that the question is whether there was a second offense in the latter part of the year 1877." To like effect were the decisions in *S. v. Dunston,* 78 N. C., 420, and *S. v. Deaton,* 65 N. C., 496. And such was recognized to be the law, as it obtains with us, in a well considered opinion by *Associate Justice Walker* in the recent case of *S. v. Beam,* 181 N. C., 597.

In order to repel the plea of the statute of limitations, the State offered evidence tending to show: (1) that the defendant sent his children a pony for a Christmas present in December, 1920; (2) that the following Christmas, 1921, he sent his oldest girl a book, two of his other children a basket, and the smallest one a doll; (3) that on 1 December, 1920, the prosecutrix, Mrs. Bell, who had inherited some property from her father and mother, executed a deed of trust conveying her said inheritance to R. S. McCoin, trustee, for the use and benefit of herself and her four minor children, in which said deed of trust the defendant joined on 9 December, 1920, the same having been sent to him for his signature in Beaufort County, N. C., where he then resided; (4) that in the fall of 1921 the defendant promised R. S. McCoin, who was then acting as trustee of Mrs. Bell's property, to send him a check of $200 to be used in paying the hospital bill of one of his children. This he never did; and at the time of his conversation and promise to McCoin, he expressly stated that "he wouldn't contribute anything to Mabel (Mrs. Bell), but he wanted to do what he could for the children."

It is contended by the State that the foregoing acts of the defendant, committed, as they were, within two years of the finding of the bill of indictment, take the case from under the bar of the statute, and, for this position, the decision in *S. v. Davis, supra,* is cited as an authority. It

will be noted, however, that in *Davis's case, supra,* there was a promise to provide for the wife's support, which amounted to a recognition of the marital obligations, and this promise was actually carried out for a period of two weeks. A refusal then on the part of the defendant to continue to support his wife and child was held to be a second offense, or a fresh act of abandonment and failure to support within the meaning of the statute.

But in the case at bar Mrs. Bell had obtained an absolute divorce from the defendant in the spring of 1921, long before the defendant's conversation with McCoin, and before his Christmas gift to the children in 1921. Hence, the only acts done by the defendant within the period of the statute, and while the bonds of matrimony were still subsisting between the prosecutrix and himself, were the giving of the pony as a Christmas present to the children in 1920, and the consenting to the placing of his wife's property in trust by joining in the deed which had been sent to him for his signature. This was not sufficient to take the case out of the statute and start it to running anew. Neither of these acts, nor the two combined, under the circumstances of the instant case, could hardly be said to partake of the substance of adequate support. The former was intended only as an act of kindness, being a Christmas gift to the children, and the latter was a mere legal formality. Furthermore, two elements are necessary to constitute the offense here charged, namely, willful abandonment of the wife and failure to provide adequate support. Such has been the direct holding in at least three cases: *S. v. Smith,* 164 N. C., 479; *S. v. Toney,* 162 N. C., 635, and *S. v. May,* 132 N. C., 1021.

The State also relies upon the decision in *S. v. Hannon,* 168 N. C., 215. But in that case there was not only a promise made to the wife to provide support within the statutory period, but an actual resumption of the marital relations; and what is said in an opinion should always be considered in connection with the facts of the case in which it is delivered. "Every opinion, to be correctly understood, ought to be considered with a view to the case in which it was delivered." *Marshall, C. J.,* in *U. S. v. Burr,* 4 Cr., 470.

The civil liability or obligation devolving upon the defendant to support his minor children is not before us for consideration. *Sanders v. Sanders,* 167 N. C., 319. Nor are we called upon to say whether such conduct as here disclosed should be made criminal. We can only declare the law as we find it, and the courts are not at liberty to extend the terms of a penal statute, by implication or otherwise, to include cases not clearly within its meaning. In other words, the rule of strict construction prevails. *S. v. Falkner,* 182 N. C., 795. There is nothing on the present record to show what order, if any, was made with respect

to the care and custody of the defendant's minor children in the divorce proceedings, brought by his wife in the spring of 1921; but from what is now apparent it would seem that the civil right of these children to call upon the defendant for support is still subsisting, and certainly it is not impaired by the lapse of time. *Sanders v. Sanders, supra.* They are evidently living with their mother, but it does not appear that she has been awarded their custody by order of court, or otherwise.

The unfortunate and pathetic circumstances here disclosed, especially in the absence of any exculpating testimony, may have a strong tendency to excite sympathy for the minor children, on the one hand, and to elicit criticism of the defendant on the other, but it behooves us to bear in mind the fact that neither partisan advocacy nor sharp invective should find a place, or even support, in a calm, judicial opinion; and further, it should be remembered that we are engaged in "running the base line" here, with square and plumb, or needle and compass, as it were, and hence it is not permissible for us to "stretch" the criminal law, by equitable construction or otherwise, to include cases not expressly covered by the statute. We must hew to the line and let the chips fall wherever they may. And though we may think the law ought to be otherwise, this should not blind our judgment to what it really is. The duty of legislation rests with another department of the Government. It is ours only to declare the law, not to make it. *Moore v. Jones,* 76 N. C., 187. The people of North Carolina have ordained in their Constitution (Art. I, sec. 8) that the legislative, executive, and supreme judicial powers of the Government should be and ought to remain forever separate and distinct from each other. Such is their expressed will, and from the earliest period in our history they have endeavored with sedulous care to guard this great principle of the separation of the powers. In this country those who make the laws determine their expediency and wisdom, but they do not administer them. The chief magistrate who executes them is not allowed to judge them. To another tribunal is given the authority to pass upon their validity and constitutionality, "to the end that it be a government of laws and not of men." From this unique political division results our elaborate system of checks and balances—a complication and refinement which repudiates all hereditary tendencies and makes the law supreme. In short, it is one of the distinct American contributions to the science of government; and the judiciary—the department of trial and judgment—of all others, without hesitation or turning, should hold fast to the basic principle upon which this Government is founded. The courts are vested with judicial powers only, and it is no part of their function to change or to amend the criminal statutes enacted by the Legislature. On the other hand, the universal rule is that such statutes are to be construed strictly.

In recognition and support of this well established formula, there must be some uniformity in judicial decisions, when dealing with a given subject, or else, the law itself, the very chart by which we are sailing, will become as unstable and uncertain as the shifting sands of the sea—a condition which, all must agree, would be intolerable and destructive of the only enduring foundation upon which the present and future hope of this Government of laws and not of men must be builded and sustained.

The identical law which this Court has heretofore declared to be applicable in such cases is now invoked by the defendant for his protection. He relies upon a statute of repose and the stability of our decisions. With assured confidence, he stands at the bar and asks that the same law which is administered to others shall be administered to him. The righteousness of this position can hardly be denied by a great State which has vouchsafed to every person within its borders even-handed justice and the equal protection of the laws.

It is not every abandonment that is made criminal by the statute as enacted by the Legislature. In the first place, the act of abandonment must be willful, or without just cause, excuse, or justification, which is more than a mere separation (*S. v. Falkner,* 182 N. C., 793); and this must be accompanied by a failure to provide adequate support for such abandoned wife and the children which the defendant may have begotten upon her, whether born in lawful wedlock or not. But this would not include the children of any other marriage or cohabitation. The children are referred to only in connection with the adequacy of support for the abandoned wife, and then only those which the defendant may have begotten upon her. But it is stated in the opinion of the Court that the statute should be construed as if it were framed in the following language: "If any husband shall willfully abandon his wife without providing adequate support for such wife, he shall be guilty of a misdemeanor, and if he shall willfully abandon the children which he may have begotten upon her without providing adequate support for such children, he shall be guilty of a misdemeanor." Here, it will be observed, in the revised statement of the statute, as rewritten by the Court, the words "which he may have begotten upon her" are meaningless unless they refer to the children which the defendant may have begotten upon his abandoned wife. Manifestly, if there be no abandoned wife, there can be no such children. On the other hand, if these words, as here used by the Court, are to be interpreted as meaning legitimate children—and they could be construed to mean illegitimate children just as well, for "her," a pronoun, without an antecedent noun to represent, would be a prodigal term—then the act of the Legislature has

been entirely changed. The courts are treading on dangerous ground when they begin the practice of rewriting criminal statutes.

If this defendant were indicted and stood convicted of a capital felony, it could hardly be conceived that the present interpretation of the statute would be permitted to stand for a moment, and yet the same rule of strict construction which is to be observed in interpreting statutes dealing with the more serious offenses applies equally to those having to do with crimes of a lesser magnitude. It were better that the Legislature should be given an opportunity to declare the law more explicitly than that we should depart from the settled rule in matters of this kind, which has been approved by the wisdom of the ages.

Let there be no misunderstanding. I am not defending or offering any excuse for the conduct of the defendant here. It may have been highly reprehensible, and doubtless it was, but my concern is with a far more serious question, and one which involves the policy of the Court in dealing with the rights and liberties of our citizens. If we are to amend this statute, where is such practice to end or to be stopped? I can find no authority or license for its use in this instance.

My position is simply this: The only wife mentioned in the statute is the wife which the defendant husband has willfully abandoned. The only children mentioned in the statute are those which the defendant husband may have begotten upon his abandoned wife, and none other. Clearly, if no wife has been abandoned, there can be no children of "such wife." Furthermore, the children are mentioned only in connection with the adequacy of support for the abandoned wife. This interpretation is supported and fortified by the language used in C. S., 4450, a cognate statute. In reply to this, I am met with the statement that the law ought to be otherwise. Possibly so, but that is a matter for the Legislature. With all due deference, I think the punitory judgment pronounced herein should be withheld and the parties allowed to proceed in a civil action, as already suggested, if so advised.

WALKER, J., concurs in dissent.