Raymond E. Aldrich, J.
The defendant, William Devlin, demurs to the third count of indictment No. 223/70, charging him with the crime of sale and possession of hypodermic syringes and hypodermic needles; possession of certain other instruments, a class A misdemeanor, upon the grounds that the facts stated do not constitute a crime in that the possession of ordinary *617 “ water pipes ” was not within the proscription intended by the Legislature in enacting section 3395 of the Public Health Law.
The third count of the indictment charges that the crime was committed as follows: 11 The said defendants, at the City of Poughkeepsie, County of Dutchess and State of New York, on or about the 30th day of September, 1970, knowingly, unlawfully and criminally had under their possession and control instruments, to wit: water pipes, adapted for the administering of narcotic drugs, and possessed such instruments for that purpose.” (Italics added.)
The charge made is not one that the defendant possessed ordinary water pipes so often conspicuously displayed in tobacco stores, antique shops or gift shops for sale, or in homes of law abiding citizens as ornamental decorations and mementos. Bather the charge is made that the defendant possessed ‘ ‘ water pipes” which had been “adapted” in order to administer narcotic drugs and that he possessed them for such.
To assume that the Legislature intended by the enactment of section 3395 of the Public Health Law to prohibit all possession of ordinary “water pipes ” per se, except by prescription of a physician, would be a ludicrous interpretation of legislative intent, and an unreasonable interpretation of the section.
The legislative intent is the primary consideration in the construction of a statute, and it has been said to be the cardinal rule of construction.
What this court does believe is that the Legislature did intend to prohibit the possession of, or the conversion and alteration of any instrument or implement whether “water pipes” or otherwise, so that they thereby become ‘ ‘ adapted ’ ’ for narcotic purposes, rather than the lawful purposes for which they originally were, or should have been, made.
To “adapt” means to make fit, suitable, adjust, or modify or alter for a different use, and this meaning was the legislative intent in the enactment of section 3395. The intention was to prevent the taking of a harmless instrumentality and converting it into a dangerous vehicle for the administration of narcotic drugs.
For this court to hold that section 3395 was intended to prohibit only instruments or implements used in the administration of drugs which are similar to, or like hypodermic syringes and hypodermic needles, would place too narrow a construction upon the statute, and give a specious, fallacious and unrealistic interpretation to the legislative attempt to alleviate the problem of narcotics so horribly present and moving in our society. *618 (Burks v. Bosso, 180 N. Y. 341 ; People v. Kaye, 212 N. Y. 407 ; Bers v. Erie R. R. Co., 225 N. Y. 543.)
Furthermore, a reading of the heading of section 3395 reveals a semicolon separating the prohibition of “ sale and possession of hypodermic syringes and hypodermic needles ” from the “possession of certain other instruments ”, and these latter words, I believe, were to encompass instrumentalities or implements ordinarily used in a manner not analogous to the uses ordinarily made of syringes and needles (cf People v. Berger, 61 Misc 2d 475). Had the heading of the statute prohibited hypodermic syringes, hypodermic needles, and other similar or like instruments, then a case might be made out eliminating water pipes from the prohibition of the statute upon the grounds that an instrument having a dissimilar use was involved. But the statute does not so read, and the words ‘ ‘ certain other instruments ” in section 3395 envisage such apparatuses as “water pipes ” which had been intentionally and deliberately altered so as to be adapted for the administration of narcotic drugs. (Tyrrell v. Mayor, 159 N. Y. 239.)
A further examination of section 3395 reveals that it contains three subdivisions, the first two referring only to a hypodermic syringe or hypodermic needle, whereas the third subdivision refers to a “ a hypodermic syringe or hypodermic needle, or any other instrument or implement adapted for the administering of narcotic drugs which other instrument or implement is possessed for that purpose ” (italics added), and such differentiation adds credence to, and is supportive of the decision herein.
By virtue of the foregoing, the demurrer is disallowed.