IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-97

No. 222PA21-1

Filed 19 August 2022

CHARLOTTE POPE MILLER, Administratrix of the Estate of the Late JOHN LARRY MILLER

v.

CAROLINA COAST EMERGENCY PHYSICIANS, LLC; HARNETT HEALTH SYSTEMS, INC., d/b/a BETSY JOHNSON REGIONAL HOSPITAL; and DR. AHMAD S. RANA

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 277 N.C. App. 449, 2021-NCCOA-212, affirming in part, reversing in part, vacating in part, and remanding an order entered on 9 November 2015 by Judge Stanley L. Allen, an order entered on 17 January 2017 by Judge Gale M. Adams, and orders entered on 23 April 2019 and 4 October 2019 by Judge Claire V. Hill in Superior Court, Harnett County. Heard in the Supreme Court on 11 May 2022.

*Hedrick Gardner Kincheloe & Garofalo LLP, by Patricia P. Shields and Linda Stephens, and Brent Adams & Associates, by Brenton D. Adams, for plaintiff-appellee Charlotte Pope Miller.*

*Yates, McLamb, & Weyher, L.L.P., by Maria P. Wood and Madeleine M. Pfefferle, for defendant-appellant Harnett Health Systems, Inc. d/b/a/ Betsy Johnson Regional Hospital.*

EARLS, Justice.

To bring a medical malpractice claim in North Carolina, a plaintiff must

comply with Rule 9(j) of the North Carolina Rules of Civil Procedure. Rule 9(j) provides in relevant part that a plaintiff's pleadings must "specifically assert[ ] that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person who [(1)] is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and [(2)] who is willing to testify that the medical care did not comply with the applicable standard of care." N.C.G.S. § 1A-1, Rule 9(j)(1) (2021). The question in this case is whether a trial court must dismiss a complaint that facially complies with Rule 9(j) when it is subsequently determined that the plaintiff's Rule 9(j) witness is unwilling to testify that the defendant in a medical malpractice action violated the applicable standard of care in one (but only one) of the numerous ways alleged in the plaintiff's complaint.

¶ 2      When a defendant files a motion to dismiss a complaint that facially complies with Rule 9(j), the dispositive question is whether, taking the evidence in the light most favorable to the plaintiff, it was reasonable for the plaintiff to believe that at the time the complaint was filed the witness would be willing to testify against the defendant. *See Preston v. Movahed*, 374 N.C. 177, 189 (2020). The inquiry is necessarily focused on the information available to the plaintiff at the time the Rule 9(j) certification was tendered, not information that came to light after the complaint was filed. In this case, there is ample evidence in the record to support the conclusion

that the plaintiff, Charlotte Pope Miller, reasonably believed that her Rule 9(j) witness was willing to testify that defendant Harnett Health Systems, Inc. (Harnett Health) violated the applicable standard of care in the ways alleged in her complaint. Therefore, we hold that the Court of Appeals properly affirmed the trial court's denial of Harnett Health's motion to dismiss for failure to comply with Rule 9(j). The Court of Appeals also utilized the correct standard of review in examining the trial court's grant of Harnett Health's motion to exclude another witness under Rule 702 of the North Carolina Rules of Evidence. Accordingly, we affirm the decision of the Court of Appeals.

## I.     Background

¶ 3          On 8 March 2010, John Larry Miller complained of a painful, distended stomach and being unable to urinate. John's wife, Charlotte, drove him to the emergency room at Betsy Johnson Regional Hospital in Dunn. At the time, Betsy Johnson Regional Hospital was operated by Harnett Health. At the hospital, John was seen by Dr. Ahmad S. Rana, an emergency room physician, who examined John and ordered placement of a catheter and a urinalysis. Dr. Rana prescribed antibiotics and discharged John that evening, against Charlotte's wishes. The following evening, John was still experiencing significant pain and remained unable to urinate, so Charlotte called an ambulance to take him back to Betsy Johnson Regional Hospital, where he was again seen by Dr. Rana. Dr. Rana ordered blood work, which indicated

renal failure. John was pronounced dead at midnight. Throughout John's stay at the hospital, Charlotte took handwritten notes documenting her view of the treatment Dr. Rana and emergency room nurses provided to her husband.

¶ 4 On 30 September 2011, Charlotte Miller filed a medical malpractice complaint as the administrator of John's estate against Harnett Health, Dr. Rana, and Carolina Coast Emergency Physicians, LLC. Plaintiff took a voluntary dismissal and timely refiled the complaint underlying these proceedings on 6 February 2014. In her 2014 complaint, plaintiff certified that all relevant materials had been reviewed by "a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the professional care rendered by the defendants to [John] did not comply with the applicable standard of care and that such failure to comply with the appropriate standard of care was a cause of the death of [John]." That person was subsequently identified as Dr. Robert Leyrer, a board-certified emergency medicine physician then practicing in Florida.

¶ 5 In her complaint, plaintiff alleged that Harnett Health violated the standard of care applicable to John at the time he was treated through its employment of nurses who "failed to exhibit the knowledge and skill and experience of practitioners with similar training and experience practicing in the Dunn, North Carolina community." The complaint also alleged that Harnett Health was negligent in various other ways not relating to its nursing staff. For example, plaintiff alleged that

Harnett Health also violated the applicable standard of care through its employment of Dr. Rana as an apparent agent of Harnett Health and by "fail[ing] to insure through its policies and procedures that [John] receive[d] the requisite degree and standard of hospital care and treatment regularly experienced at similar hospitals," among numerous other assertions. In an affidavit submitted shortly after the 2014 complaint was filed, Dr. Leyrer attested that before the complaint was filed, he had spoken with plaintiff's attorneys and "expressed [his] opinion that the Defendants violated the appropriate standard of care in the ways specified in the Complaint." In the affidavit, Dr. Leyrer also stated that he had communicated his "willingness to come to NC and testify in this case as to the negligence of the Defendants and the various violations of the appropriate standard of care by the Defendants which are set out in the Complaint, and copy of which is attached hereto and incorporated by reference."

¶ 6        Dr. Leyrer sat for a deposition on 29 May 2015. During the deposition, Dr. Leyrer explained why he believed Dr. Rana's treatment of John fell short of the applicable standard of care. Dr. Leyrer was not specifically asked for his opinion regarding the adequacy of the treatment rendered by Harnett Health's nursing staff. However, at various times during the deposition, Dr. Leyrer indicated that his criticisms of the treatment John received were limited to his criticisms of Dr. Rana. When counsel for Harnett Health asked Dr. Leyrer whether "outside of what you told

me with regard to the care and treatment provided by Dr. Rana . . . the remaining treatment would have been within the standard of care, correct?", Dr. Leyrer responded that "[a]t this time I can't think of anything else, correct." When asked whether he would "agree . . . that with regard to the other care and treatment set forth in the medical records for March 9 that care and treatment was within the standard of care outside of the deviations that you described for us," Dr. Leyrer replied that "[a]t this time I believe it was." Dr. Leyrer also disclosed that he did not consider himself "an emergency nursing expert." Elsewhere, Dr. Leyrer agreed that he had not previously "expressed any opinions to Plaintiff's counsel outside of those [he had] just listed [concerning Dr. Rana] . . . regarding deviations from the standard of care[.]"

¶ 7        Following the deposition, Harnett Health filed a motion to dismiss pursuant to Rule 9(j), asserting that plaintiff "could not have reasonably expected Dr. Leyrer to qualify as an expert witness against Harnett Health" and that Dr. Leyrer "is also not willing to testify that the care rendered by Harnett Health did not comply with the applicable standard of care." Specifically, Harnett Health argued that dismissal was warranted because Dr. Leyrer "testified that he did not have any opinions regarding any care provided by nurses or other personnel at Harnett Health."

¶ 8        As part of its response in opposition to Harnett Health's motion to dismiss, plaintiff's counsel submitted an affidavit stating that "prior to filing the initial

complaint," Dr. Leyrer communicated to counsel "his ability and willingness to testify that the defendant hospital did not comply with the appropriate standard of care and that the violation of this standard of care by the defendant hospital caused the death of the late John Miller." On 9 November 2015, the trial court denied Harnett Health's motion to dismiss based on its determination that

> [a]t the time [plaintiff's attorney] made his original 9(j) Certification in his filing of the complaint on September 30, 2011, and his filing of the subsequent complaint on February 6, 2014 . . . [plaintiff's attorney] exercised reasonable care and diligence and reasonably expected Dr. Leyrer to qualify as an expert witness under Rule 702 . . . and . . . he reasonably expected Dr. Leyrer to testify in court that the medical care rendered to the plaintiff's decedent by the defendant hospital did not comply with the applicable standard of care.

The trial court later granted Harnett Health's motion to exclude Dr. Leyrer's testimony on the grounds that he failed to express standard of care opinions against Harnett Health and was not sufficiently familiar with the relevant medical community at the time John was treated.

¶ 9        In addition to Dr. Leyrer, plaintiff also designated Dr. Gary B. Harris as an expert on the topic of emergency medicine. Dr. Harris was a practicing emergency room physician who had experience supervising and instructing nurses. Prior to his deposition, Dr. Harris signed an affidavit detailing his efforts to become familiar with the medical community in Dunn and the facilities at Betsy Johnson Regional Hospital. According to Dr. Harris, these efforts included reviewing demographic data

for Harnett County from 2010 to 2015, reviewing Betsy Johnson Regional Hospital's renewal application completed in 2010 which contained information regarding hospital staff, facilities, and its patient population, and establishing and maintaining professional contacts with emergency physicians who practice in communities similar to Dunn. In his deposition, Dr. Harris testified that he was familiar with the standard of care for nurses and emergency room physicians practicing in Dunn, and that Dr. Rana and the nurses who treated John when he visited Betsy Johnson Regional Hospital violated that standard of care in multiple ways.

¶ 10          Harnett Health moved to disqualify and exclude Dr. Harris "on the grounds that [he] do[es] not qualify as [a] standard of care expert[ ] under Rule 702 of the North Carolina Rules of Evidence and N.C.G.S. § 90-21.12." In the same motion, Harnett Health requested an order granting judgment in its favor and dismissing plaintiff's case against Harnett Health with prejudice "in its entirety." On 4 October 2019, the trial court granted Harnett Health's motion, finding that Dr. Harris was "unqualified under Rule 702(a) to render an opinion in this case . . . because [he] has not sufficiently demonstrated through his depositions or affidavits that he is familiar with the local standards at the time of this incident as required by [N.C.G.S.] § 90-21.12." In addition, the trial court noted that Dr. Harris "did not review the plaintiff's handwritten notes, certain EMT records, or certain prior medical records before forming his opinions in this case. Additionally, he had not reviewed the documents

prior to his depositions." Based on its conclusion that there existed "no genuine issues of material fact . . . as to the applicable standard of care, liability, proximate causation, plaintiff's contributory negligence, damages and agency," the trial court entered summary judgment in favor of Harnett Health and dismissed all claims against Harnett Health with prejudice.

## II.     The Court of Appeals opinion

Plaintiff filed a timely notice of appeal from the trial court's order excluding Dr. Harris and granting summary judgment in Harnett Health's favor. Harnett Health subsequently gave notice of cross-appeal from the 9 November 2015 order denying its motion to dismiss on Rule (9)(j) grounds.[1] In a unanimous opinion, the Court of Appeals affirmed the order denying Harnett Health's motion to dismiss and reversed the order excluding Dr. Harris's testimony. *See Miller v. Carolina Coast Emergency Physicians, LLC*, 277 N.C. App. 449, 2021-NCCOA-212.

With respect to the motion to dismiss, the Court of Appeals explained that consistent with Rule 9(j)'s function as "a gatekeeper . . . to prevent frivolous malpractice claims . . . trial courts determining compliance with Rule 9(j) should examine the facts and circumstances known or those which should have been known

___

[1] Plaintiff also filed timely notice of appeal from various other orders entered by the trial court throughout the proceedings, including orders adjudicating motions filed by Dr. Rana. Although the Court of Appeals resolved questions arising from these orders, only the order denying Harnett Health's motion to dismiss and the order granting Harnett Health's motion to exclude Dr. Harris are presently before us. Accordingly, our summary of facts and the proceedings below is limited to the facts and legal issues relating to these two orders.

to the pleader *at the time of filing.*" *Id.* ¶ 46 (cleaned up) (emphasis in the original). The question before the court was whether "considering the facts and circumstances at the time Plaintiff filed her Complaint—viewed in the light most favorable to Plaintiff . . . she reasonably believed Dr. Leyrer was willing to testify against Harnett Health." *Id.* ¶ 50–51. In the court's view, notwithstanding the "reservations" Dr. Leyrer ultimately expressed at his deposition, there existed "no evidence indicating Dr. Leyrer informed counsel that [he] was unwilling to testify against Harnett Health prior to his pre-deposition affidavit." *Id.* ¶ 51. Thus, based in part on plaintiff's counsel's affidavit "asserting Dr. Leyrer stated he was willing to testify against all Defendants in a phone conversation prior to filing the 2011 Complaint," the court concluded that "the Record indicates at the time Plaintiff filed her Complaint, she reasonably believed Dr. Leyrer was willing to testify against Harnett Health." *Id.*

¶ 13        With respect to the motion to exclude Dr. Harris, the Court of Appeals concluded that the trial court "misapplied Rule 702(a)." *Id.* ¶ 77. Specifically, the Court of Appeals held that in excluding Dr. Harris "because he had not reviewed Plaintiff's notes, Decedent's EMT records, and Decedent's 'certain prior medical records,'" the trial court had erroneously "concluded Dr. Harris could not satisfy Rule 702(a)(1)'s requirement [that] his testimony be based on sufficient facts or data." *Id.* ¶ 79. According to the court, the fact that Dr. Harris had not reviewed certain information "affect[ed] only the *weight to be assigned* [his] opinion rather than its

*admissibility*." *Id.* (quoting *Pope v. Bridge Broom, Inc.*, 240 N.C. App. 365, 374 (2015)). Therefore, the court held that the trial court "erred in concluding Dr. Harris's opinions were inadmissible" because "questions as to the weight to be given to his opinions should be resolved by a jury." *Id.* ¶ 80. Separately, however, the court affirmed the order granting Harnett Health's motion to exclude Dr. Leyrer's testimony as against Harnett Health directly. *Id.* ¶ 86.

¶ 14 Subsequently, Harnett Health filed a petition for discretionary review pursuant to N.C.G.S. § 7A-31. On 14 December 2021, this Court issued a special order allowing review as to the following issues: Whether the Court of Appeals (1) "err[ed] in affirming the trial court's order denying Harnett Health's Motion to Dismiss pursuant to Rule 9(j)" and (2) "err[ed] in applying a de novo standard of review instead of an abuse of discretion standard in its exclusion of Dr. Harris."

### III. Harnett Health's motion to dismiss on Rule 9(j) grounds

¶ 15 Rule 9(j) provides in relevant part that:

> Any complaint alleging medical malpractice by a health care provider pursuant to [N.C.]G.S. 90-21.11(2)a[ ] in failing to comply with the applicable standard of care under [N.C.]G.S. 90-21.12 shall be dismissed unless:
>
> > (1) The pleading specifically asserts that the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the

medical care did not comply with the applicable standard of care . . . .

N.C.G.S. § 1A-1, Rule 9(j). The rule "serves as a gatekeeper, enacted by the legislature, to prevent frivolous malpractice claims by requiring expert review *before* filing of the action." *Moore v. Proper*, 366 N.C. 25, 31 (2012). "Because Rule 9(j) requires certification at the time of filing that the necessary expert review has occurred, compliance or noncompliance with the Rule is determined at the time of filing." *Id.* When a defendant later files a motion to dismiss a complaint that facially complied with Rule 9(j), "a court should look at 'the facts and circumstances known or those which should have been known to the pleader' at the time of filing." *Id.* (quoting *Trapp v. Maccioli*, 129 N.C. App. 237, 241, *disc. rev. denied*, 348 N.C. 509 (1998)). An appellate court reviews a trial court's allowance or denial of a defendant's motion to dismiss de novo, taking "the evidence . . . in the light most favorable to [the] plaintiff." *Preston v. Movahed*, 374 N.C. 177, 186 (2020).

¶ 16    Harnett Health raises two arguments in support of its contention that the Court of Appeals erred in affirming the trial court's denial of its motion to dismiss. Their first argument is that plaintiff has failed to comply with Rule 9(j) because Dr. Leyrer stated in his deposition testimony that he was unwilling to testify to the quality of the care rendered by nurses employed by Harnett Health. As a predicate to this argument, Harnett Health asserts that a reviewing court conducts one inquiry when evaluating compliance with Rule 9(j)'s first requirement (the requirement that

the plaintiff identify a person who is "reasonably expected to qualify as an expert witness under Rule 702") but a different inquiry when evaluating compliance with Rule 9(j)'s second requirement (the requirement that the plaintiff identify a person who is "willing to testify that the medical care did not comply with the applicable standard of care"). According to Harnett Health, when assessing compliance with the first requirement, the question is whether the plaintiff had a "reasonable belief" that the person would qualify as an expert witness under Rule 702; when assessing compliance with the second requirement, the question is whether the person is or is not presently willing to testify that the defendant's medical treatment failed to comport with the applicable standard of care.

¶ 17    This argument is untenable in light of the precedent we established in *Preston*. In that case, the defendant filed a motion to dismiss pursuant to Rule 9(j), asserting that the plaintiff had failed to identify a person "willing to testify against defendant at the time of filing." 374 N.C. at 185. On review, and quoting extensively from *Moore*, we expressly adopted the same analytical approach utilized to review a challenge to a plaintiff's compliance with the "reasonably expected to qualify as an expert witness" requirement. *See id.* at 183 ("While the Rule 9(j) issue in *Moore* . . . focused specifically on whether the plaintiff's expert was reasonably expected to qualify as an expert witness, we conclude that the analytical framework set forth in *Moore* applies equally to other Rule 9(j) issues in which a complaint facially valid under Rule 9(j) is

challenged on the basis that the certification is not supported by the facts." (cleaned up)).

¶ 18 We then explained that:

> [W]here, as here, a defendant files a motion to dismiss under Rule 12(b)(6) challenging a plaintiff's facially valid certification that the reviewing expert was willing to testify at the time of the filing of the complaint, the trial court must examine *the facts and circumstances known or those which should have been known to the pleader at the time of filing*, and to the extent there are reasonable disputes or ambiguities in the forecasted evidence, the trial court should draw all reasonable inferences in favor of the nonmoving party at this preliminary stage.

*Id.* at 183–84 (cleaned up) (emphasis added). *Preston* conclusively establishes that courts analyze a motion to dismiss on Rule 9(j) grounds in the exact same way when a defendant challenges a plaintiff's compliance with Rule 9(j)(1)'s first requirement as when a defendant challenges a plaintiff's compliance with Rule 9(j)(1)'s second requirement. In evaluating the second requirement, just as with the first Rule 9(j) requirement, what matters is what was known or what reasonably should have been known at the time of the filing. The dispositive question is whether "taking the evidence in the light most favorable to plaintiff, the factual record . . . demonstrates that . . . [the Rule 9(j) expert] was willing *at the time of the filing* of the [complaint] to testify against [the] defendant . . . . on the basis that [the] defendant failed to meet the standard of care[.]" *Id.* at 190 (emphasis added).

¶ 19 Nonetheless, Harnett Health contends that the test set forth in *Moore* and

*Preston* does not control because "[a]s specified by the language of the statute, the 'reasonable belief' language modifies the proposed expert's qualifications under Rule 702, not the proposed expert's willingness to testify." Harnett Health appears to be referring to the legislature's use of the phrase "*reasonably expected* to qualify" in describing the first Rule 9(j) requirement; the legislature uses the phrase "*is willing* to testify" in describing the second. But the reason courts assess compliance with Rule 9(j) based on what a plaintiff knew or reasonably should have known at the time the complaint was filed is not the fact that the legislature used the phrase "reasonably expected." Instead, courts assess Rule 9(j) compliance at the time a complaint is filed because "the legislature intended Rule 9(j) to control *pleadings* in medical malpractice claims." *Thigpen v. Ngo*, 355 N.C. 198, 203, (2002) (emphasis added); *see id.* ("The legislature specifically drafted Rule 9(j) to govern the *initiation* of medical malpractice actions and to require physician review as a condition for filing the action." (emphasis added)). Moreover, the statutory reference in Rule 9(j)(1) to "is willing to testify," when read in context, clearly refers to a witness who has reviewed the pleading prior to the time of filing rather than to a witness who is testifying in a subsequent deposition or trial. It is illogical to assess a plaintiff's compliance with Rule 9(j) based on what a proposed expert witness says months or years after a complaint is filed. We decline Harnett Health's implicit invitation to overrule *Preston* and depart from *Moore*.

¶ 20        Harnett Health's second argument is that even if plaintiff's compliance with Rule 9(j) should be assessed at the time her complaint was filed (as it must), plaintiff "could not have reasonably believed when she filed her Complaint that Dr. Leyrer was willing to testify against Harnett Health." This argument is unavailing for multiple reasons.

¶ 21        At the outset, this argument ignores evidence in the record that plainly supports the conclusion that Dr. Leyrer was willing to testify that Harnett Health violated the applicable standard of care at the time plaintiff filed her complaint. Contrary to Harnett Health's assertion that "the source of Plaintiff's belief that [Dr. Leyrer] was willing to testify [against Harnett Health] remains unclear," the record is clear: the record contains an affidavit signed by Dr. Leyrer shortly after the second complaint was filed stating that he had "examined all medical records pertaining to the negligence of the defendants, Carolina Coast Emergency Physicians, LLC; *Harnett Health Systems, Inc., d/b/a Betsy Johnson Regional Care* and Dr. Ahmad S. Rana" and "[t]hat on the 26th day of September, 2011, I had a telephone conversation with [Charlotte's counsel] during which *I expressed my opinion that the Defendants violated the appropriate standard of care in the ways specified in the complaint*, a copy of which is attached hereto and incorporated by reference." In the same affidavit, Dr. Leyrer also recounted that "[s]ometime prior to the second complaint being filed, I again expressed my willingness to come and testify in this case as to the negligence

of the Defendants *which are set out in the complaint.*" Although Dr. Leyrer later indicated he would not be willing to testify that Harnett Health violated the standard of care with respect to its nursing staff, this does not negate the evidence in the record establishing that Dr. Leyrer told plaintiff's counsel he was willing to testify that Harnett Health "violated the appropriate standard of care in the ways specified in the complaint" on multiple occasions prior to the filing of plaintiff's amended complaint.

¶ 22      It may be possible that Dr. Leyrer misunderstood the allegations contained in plaintiff's complaint, failed to thoroughly vet the complaint, misrepresented what he was willing to testify to, or intended to communicate only that he was willing to testify to the negligence of the defendants other than Harnett Health. But Dr. Leyrer was a qualified emergency room physician with decades of professional experience. There is no evidence in the record suggesting plaintiff had reason to doubt Dr. Leyrer's competence, thoroughness, or honesty at the time of filing. Absent such evidence, it would have been unreasonable for plaintiff's counsel to presume that Dr. Leyrer meant something other than what he said in multiple pre-filing conversations with counsel as documented in Dr. Leyrer's affidavit. When Dr. Leyrer told plaintiff's counsel he had reviewed the relevant medical records and was willing to testify that the defendants named in the complaint had violated the applicable standard of care in the ways set forth in the complaint, plaintiff's counsel formed "a[ ] reasonable

belief" that Dr. Leyrer would be willing to testify against Harnett Health "based on the exercise of reasonable diligence under the circumstances." *Preston*, 374 N.C. at 188 (quoting *Moore*, 366 N.C. at 31). Regardless, even if we were to credit Harnett Health's contention that the meaning of Dr. Leyrer's affidavit is ambiguous because he "only expressed willingness to testify against 'the Defendants' generally and lacked any criticisms of Harnett Health specifically," we reiterate that "to the extent there are reasonable disputes or ambiguities in the forecasted evidence, the trial court should draw all reasonable inferences in favor of the nonmoving party at this preliminary stage." *Id.* at 189 (quoting *Moore*, 366 N.C. at 32).

¶ 23       Furthermore, Harnett Health's assertion that Dr. Leyrer's deposition testimony demonstrates he "was never critical of Harnett Health" overstates the significance of Dr. Leyrer's deposition testimony. At most, Dr. Leyrer's deposition testimony revealed that he would be unwilling to testify that the nurses who treated John violated the applicable standard of care. Harnett Health does not dispute the fact that Dr. Leyrer's deposition testimony included numerous detailed criticisms of the treatment provided by Dr. Rana. And Harnett Health acknowledges that plaintiff's 2014 complaint "asserts liability against Harnett Health based on . . . liability for Dr. Rana's alleged negligence as an apparent agent." Thus, as Harnett Health implicitly concedes, the record establishes that Dr. Leyrer has at all times during this litigation remained willing to testify that Harnett Health violated the

standard of care in a manner consistent with at least one of the theories set out in plaintiff's complaint.

¶ 24      Finally, Harnett Health contends that plaintiff's complaint should be dismissed for failure to comply with Rule 9(j) for a separate reason: because the record demonstrates that plaintiff could not have reasonably believed that Dr. Leyrer would "qualify as an emergency nursing expert under Rule 702 of the North Carolina Rules of Evidence."[2] Once again, Harnett Health relies primarily on its characterization of Dr. Leyrer's deposition testimony. As explained above, the salient question is what plaintiff reasonably believed *at the time the complaint was filed*. As the Court of Appeals correctly noted, " '[t]he preliminary, gatekeeping question of whether a proffered expert witness is reasonably expected to qualify as an expert witness under Rule 702 is a different inquiry' than whether the witness [ultimately] qualifies." *Miller*, 2021-NCCOA-212, ¶ 52 (quoting *Moore*, 366 N.C. at 31).

¶ 25      North Carolina Rule of Evidence 702(d) provides for the qualification of a

---

[2] It is not entirely clear if Harnett Health intended to bring this question before the Court. In its opening brief, Harnett Health argues that "even if Plaintiff could have reasonably expected that Dr. Leyrer was willing to testify against Harnett Health, which is expressly denied, she could not have reasonably expected that [Dr.] Leyrer would qualify as an emergency nursing expert under Rule 702 of the North Carolina Rules of Evidence." Yet in its reply brief, Harnett Health states that "[n]otwithstanding that the reasonableness of Plaintiff's expectation of Dr. Leyrer's qualification is not at issue in this Discretionary Review, Plaintiff-Appellee raises this issue in their response brief." Regardless, because the special order allowing discretionary review could fairly be read to encompass this question, and because the parties both provide arguments in support of their respective positions, we assume this question is properly before the Court.

physician "who by reason of active clinical practice . . . has knowledge of the applicable standard of care for nurses, nurse practitioners, certified registered nurse anesthetists, certified registered nurse midwives, physician assistants, or other medical support staff . . . with respect to the standard of care of which he is knowledgeable of . . . ." N.C.G.S § 8C-1, Rule 702(d) (2021). In this case, the record indicates that at the time plaintiff filed her complaint and certified compliance with Rule 9(j), she was aware that Dr. Leyrer was a practicing emergency room physician who had served for more than two decades as the Director of Emergency Medicine at a regional medical center. Thus, as the Court of Appeals correctly concluded, plaintiff reasonably expected Dr. Leyrer to qualify as an expert witness under Rule 702 because "Rule 702(d) only requires that a physician have knowledge of the standard for nursing care by means of the physician's clinical practice [and] Dr. Leyrer was a practicing emergency physician at the time Plaintiff filed the Complaint." *Miller*, 2021-NCCOA-212, ¶ 52. Accordingly, we uphold the Court of Appeals' affirmance of the trial court's denial of Harnett Health's motion to dismiss on Rule 9(j) grounds.

## IV.     The standard of review on appeal from a Rule 702 decision

¶ 26      In addition to challenging the Court of Appeals' decision regarding its motion to dismiss on Rule 9(j) grounds, Harnett Health also challenges the Court of Appeals' decision to reverse the trial court's order excluding Dr. Harris, plaintiff's other expert witness, under Rule 702. As defined in its petition for discretionary review and this

Court's special order allowing the petition in part, this challenge is limited to the question of whether the Court of Appeals utilized the correct standard of review in examining the trial court's order. Specifically, Harnett Health contends that the Court of Appeals "erroneously applied a *de novo* standard of review . . . despite longstanding precedent requiring adherence to the abuse of discretion standard."

Rule 702(a) provides that

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion, or otherwise, if all of the following apply:
>
> > (1) The testimony is based upon sufficient facts or data.
> >
> > (2) The testimony is the product of reliable principles and methods.
> >
> > (3) The witness has applied the principles and methods reliably to the facts of the case.

N.C.G.S. § 8C-1, Rule 702(a). In reviewing the trial court's order excluding Dr. Harris under Rule 702, the Court of Appeals explained that

> [g]enerally, we review a trial court's ruling on a motion to exclude expert testimony for an abuse of discretion. *Crocker v. Roethling*, 363 N.C. 140, 143 (2009). "However, when the pertinent inquiry on appeal is based on a question of law—such as whether the trial court properly interpreted and applied the language of a statute—we conduct de novo review." *Da Silva v. WakeMed*, 375 N.C. 1, 5 (2020).

*Miller*, 2021-NCCOA-212, ¶ 68. This is an entirely correct statement of the law. The trial court's determination that "proffered expert testimony meets Rule 702(a)'s requirements of qualification, relevance, and reliability . . . will not be reversed on appeal absent a showing of abuse of discretion." *State v. McGrady*, 368 N.C. 880, 893 (2016). But the trial court's articulation and application of the relevant legal standard is a legal question that is reviewed de novo. *See, e.g., Nay v. Cornerstone Staffing Sols.*, 380 N.C. 66, 2022-NCSC-8, ¶ 26 ("In the event that the issue before the Court is whether the [lower tribunal's] determination rests upon a misapplication of the applicable legal standard, that determination is . . . a question of law subject to de novo review."). And, whatever the standard of review, "an error of law is an abuse of discretion." *Da Silva*, 375 N.C. at 5 n.2.

¶ 28        Of course, the fact that the Court of Appeals accurately described the standard of review does not necessarily mean the Court of Appeals actually utilized the correct standard of review. If the Court of Appeals had accurately described the standard of review but proceeded to assess the merits in a manner flatly inconsistent with its description, Harnett Health's arguments might have some force. That is not what happened in this case. Here, after accurately describing the standard of review, the Court of Appeals utilized that standard of review in reaching the conclusion that the trial court erred when it "excluded Dr. Harris because he had not reviewed Plaintiff's notes, Decedent's EMT records, and Decedent's 'certain prior medical records.' "

*Miller*, 2021-NCCOA-212, ¶ 79.

¶ 29        The record demonstrates that Dr. Harris was a practicing emergency room physician who worked alongside of and was familiar with physicians who practiced in communities similar to Harnett County. Dr. Harris also undertook an extensive review of facts and data elicited from various sources to develop an understanding of the standards of care and standards of practice at Betsy Johnson Regional Hospital in 2010. In addition, Dr. Harris "examined the medical records from Harnett Health for the two hospital visits in question as well as at least some of Decedent's prior medical records. In fact, Dr. Harris was familiar with Decedent's medical history and certain medical conditions relevant to his care on the days in question." *Miller*, 2021-NCCOA-212, ¶ 80. As the Court of Appeals correctly noted, Rule 702(a) requires that expert testimony be based upon "*sufficient* facts or data," not upon *all* the facts or data in existence at the time a putative expert testifies. *Id.* ¶ 79. Thus, even if Dr. Harris did not review certain documents produced during John Miller's treatment that might have been relevant to assessing Harnett Health's negligence, Dr. Harris's testimony was still "based upon sufficient facts or data," including John's medical records.

¶ 30        Similarly, the Court of Appeals did not err in reviewing the basis for Dr. Harris's familiarity with the medical community in Harnett County. As we have previously explained, "[n]othing in our statutes or case law . . . prescribe[s] any

particular method by which a medical doctor must become 'familiar' with a given community. Many methods are possible, and our jurisprudence indicates our desire to preserve flexibility in such proceedings." *Crocker v. Roethling*, 363 N.C. 140, 147 (2009). Certainly, a physician like Dr. Harris whose knowledge comes from "his [or her] equivalent skill and training, familiarity with the equipment and techniques used by [the allegedly negligent doctor], first-hand investigation of [the community where the treatment occurred] and its hospital, and his testimony as to the similarity in the communities where he has practiced and [the community where the treatment occurred]" can satisfy the requirements of Rule 702(a). *Pitts v. Nash Day Hosp., Inc.*, 167 N.C. App. 194, 199 (2004), *aff'd per curiam*, 359 N.C. 626 (2005). The Court of Appeals' ultimate conclusion that Dr. Harris did enough to familiarize himself with the Harnett County medical community in no way suggests that the Court of Appeals utilized the wrong standard of review.

¶ 31 In light of our precedents establishing the nature and quantity of information necessary to satisfy Rule 702, the trial court either abused its discretion in choosing to disregard the uncontroverted record evidence detailing Dr. Harris's professional background and the steps he undertook to familiarize himself with Harnett County, or the trial court committed an error of law in imposing a requirement not found in Rule 702 that putative experts review *all* potentially relevant facts or data. In either case, the Court of Appeals did not err in how it approached the question of whether

the trial court's exclusion order warranted reversal. We affirm the Court of Appeals' reversal of the trial court's order granting Harnett Health's motion to exclude Dr. Harris.

## V.   Conclusion

Rule 9(j) was introduced by the General Assembly as part of legislation entitled "An Act to Prevent Frivolous Medical Malpractice Actions by Requiring that Expert Witnesses in Medical Malpractice Cases Have Appropriate Qualifications to Testify on the Standard of Care at Issue and to Require Expert Witness Review as a Condition of Filing a Medical Malpractice Action." Act of June 20, 1995, ch. 309, 1995 N.C. Sess. Laws 611. This legislative intent as expressed in the text of Rule 9(j) demands that complaints alleging medical malpractice "receive strict consideration." *Thigpen*, 355 N.C. at 202. Nevertheless, Rule 9(j) need not and cannot be interpreted in a manner that precludes litigants who have complied with all statutory requirements from bringing colorable medical malpractice claims. An overly expansive interpretation of Rule 9(j) would leave patients who have been wronged without a legal remedy and confer a judicially created immunity upon hospitals and medical staff. It would override the General Assembly's careful judgment regarding how to balance the competing interests of protecting competent healthcare professionals from frivolous lawsuits and ensuring just compensation for patients wrongfully injured by the negligent acts of those they have entrusted with their lives.

Here, the Court of Appeals did not err in affirming the trial court's denial of Harnett Health's motion to dismiss. The Court of Appeals utilized the correct standard of review in examining the trial court order allowing Harnett Health's motion to exclude one of plaintiff's expert witnesses. Accordingly, we affirm the decision of the Court of Appeals.

AFFIRMED.

Justice BARRINGER dissenting.

At issue in this case is whether this Court will enforce North Carolina Rule of Civil Procedure 9(j)—the gatekeeping rule enacted by our legislature "to prevent frivolous malpractice claims by requiring expert review *before* filing of the action," *Moore v. Proper*, 366 N.C. 25, 31 (2012)—and whether the Court of Appeals applied the undisputed standard of review, abuse of discretion, to a trial court's exclusion of expert testimony for failing to satisfy North Carolina Rule of Evidence 702(a). The plain language of Rule 9(j) provides that a plaintiff in a medical malpractice action must have an expert witness willing to testify that each defendant health care provider breached the statutory standard of care. Further, to find that a trial court abused its discretion in excluding testimony under Rule 702(a), an appellate court must examine whether the decision was manifestly unsupported by reason. Since the trial court did not examine whether plaintiff's selected expert was willing to testify, the case should be remanded for a proper application of Rule 9(j). In the alternative, since the Court of Appeals did not apply proper abuse of discretion review, the case should be remanded to the Court of Appeals for a correct analysis. I respectfully dissent.

## I.   Analysis

### A.  Rule 9(j) of the North Carolina Rules of Civil Procedure

Rule 9(j) requires, in pertinent part, that

> [a]ny complaint alleging medical malpractice by a health
> care provider pursuant to [N.C.]G.S. [§] 90-21.11(2)a. in
> failing to comply with the applicable standard of care under
> [N.C.]G.S. [§] 90-21.12 shall be dismissed unless:
>
> (1)    The pleading specifically asserts that the medical
> care and all medical records pertaining to the
> alleged negligence that are available to the plaintiff
> after reasonable inquiry have been reviewed by a
> person who is reasonably expected to qualify as an
> expert witness under Rule 702 of the Rules of
> Evidence and who is willing to testify that the
> medical care did not comply with the applicable
> standard of care[.]

N.C.G.S. § 1A-1, Rule 9(j) (2021).

Harnett Health moved to dismiss plaintiff's complaint for not complying with Rule 9(j) because Dr. Leyrer was not willing to testify against Harnett Health. Yet neither the trial court nor the Court of Appeals addressed Harnett Health's argument that the complaint should be dismissed because Dr. Leyrer was not actually willing to testify. The trial court's findings, for instance, simply stated:

> [Plaintiff's counsel] exercised reasonable care and diligence
> and reasonably expected Dr. Leyrer to qualify as an expert
> witness under Rule 702 of the Rules of Evidence and that
> he reasonably expected Dr. Leyrer to testify in court that
> the medical care rendered to the plaintiff's decedent by
> [Harnett Health] did not comply with the applicable
> standard of care.

Likewise, the trial court's conclusion stated:

> That prior to making the Rule 9(j) Certifications in
> the complaint filed September 30, 2011 and in the
> subsequent complaint filed February 6, 2014 the plaintiff's

counsel . . . exercised reasonable care and diligence to satisfy himself that those certifications were true and that his expectations set out in the Rule 9(j) Certifications in both complaints were reasonable.

As for the Court of Appeals, though it acknowledged Harnett Health's argument that "Dr. Leyrer was not willing to specifically critique Harnett Health," it still affirmed the trial court's order because "the [r]ecord indicates at the time [p]laintiff filed her [c]omplaint, she *reasonably believed* Dr. Leyrer was willing to testify against Harnett Health." *Miller v. Carolina Coast Emergency Physicians, LLC*, 277 N.C. App. 449, 2021-NCCOA-212, ¶¶ 50–51 (emphasis added).

¶ 37       Rule 9(j)'s requirement that an expert be willing to testify is not dependent on plaintiff's reasonable belief that the expert is willing to testify. Instead, Rule 9(j) contains two distinct requirements. First, the medical care and all medical records pertaining to the alleged negligence must "have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence." N.C.G.S. § 1A-1, Rule 9(j). Second, that expert witness must be "willing to testify that the medical care did not comply with the applicable standard of care." N.C.G.S. § 1A-1, Rule 9(j).

¶ 38       "When the language of a statute is clear and without ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute . . . ." *Diaz v. Div. of Soc. Servs.*, 360 N.C. 384, 387 (2006). In addition, "[o]rdinary rules of grammar apply when ascertaining the meaning of a statute." *Dunn v. Pac. Emps. Ins. Co.*, 332 N.C.

129, 134 (1992). Here, the term "reasonable expectation" is absent from the dependent clause of the second requirement: the expert must be someone "who is willing to testify that the medical care did not comply with the applicable standard of care." N.C.G.S. § 1A-1, Rule 9(j)(1). In contrast, the dependent clause of the first requirement includes the qualification "reasonably expected": the expert must be someone "who is *reasonably expected* to qualify as an expert witness under Rule 702 of the Rules of Evidence." N.C.G.S. § 1A-1, Rule 9(j)(1) (emphasis added).

¶ 39       When a legislative body "includes particular language in one section of a statute but omits it in another section of the same [a]ct, it is generally presumed that the legislative body acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. U.S.*, 464 U.S. 16, 23 (1983); *see also N.C. Dep't of Revenue v. Graybar Elec. Co.*, 373 N.C. 382, 390 n.3 (2020) (per curiam). This Court has also recognized that it must "give every word of the statute effect, . . . ensure that . . . two questions are not collapsed into one," and not ignore terms the legislature chose to use in the statute. *Moore*, 366 N.C. at 31 (cleaned up). Here, if the legislature wished the term "reasonable expectation" to apply to both requirements, it would have positioned it to modify both clauses, for instance: "a person who is reasonably expected to qualify as an expert witness and testify that the medical care did not comply with the applicable standard of care." Instead, the legislature, placed the term "reasonable expectation" within its own individual clause modifying a distinct

prepositional phrase—a person "who is *reasonably expected* to qualify as an expert witness"—and then included an entirely new clause, with a different distinct prepositional phrase—"and who is willing to testify that the medical care did not comply with the applicable standard of care"—that did include the term "willing" but not "reasonably expected." N.C.G.S. § 1A-1, Rule 9(j)(1) (emphasis added).

¶ 40          In accordance with these instructions, Rule 9(j)'s requirement that an expert be willing to testify does not depend on plaintiff's reasonable expectation but rather simply requires that plaintiff's proffered witness actually be willing to testify. Discerning whether an expert is qualified to testify requires the exercise of professional judgment; determining whether an expert is willing to testify does not. Rather, it is simply a matter of yes or no.

¶ 41          The requirement that a proffered witness actually be willing to testify is an important statutory element of Rule 9(j). As we have previously recognized, Rule 9(j) "operates as a preliminary qualifier to 'control pleadings' rather than to act as a general mechanism to exclude expert testimony." *Id.* To "avert[ ] frivolous actions," Rule 9(j) "preclude[s] any filing in the first place by a plaintiff who is unable to procure an expert who both meets the appropriate qualifications and, after reviewing the medical care and available records, is willing to testify that the medical care at issue fell below the standard of care." *Vaughan v. Mashburn*, 371 N.C. 428, 435 (2018).

¶ 42          Accordingly, the courts of this State should uphold their gatekeeping role and

dismiss actions covered by Rule 9(j) when the plaintiff's proffered expert was not willing to testify at the time the complaint was filed. Certainly, when analyzing whether an expert was actually willing to testify at the time the complaint was filed,

> the trial court must examine the facts and circumstances known or those which should have been known to the pleader at the time of filing, and to the extent there are reasonable disputes or ambiguities in the forecasted evidence, the trial court should draw all reasonable inferences in favor of the nonmoving party at this preliminary stage.

*Preston v. Movahed*, 374 N.C. 177, 189 (2020) (cleaned up). But this standard of review does not change the text of the statute itself, which requires that an expert be willing to testify at the time the complaint is filed, nor does it make that inquiry dependent on a plaintiff's "reasonable expectation."

¶ 43      Since the trial court did not examine whether Dr. Leyrer was actually willing to testify against the remaining defendants at the time the complaint was filed, this case should be remanded for the trial court to properly apply the second requirement of Rule 9(j).

¶ 44      Yet even if Rule 9(j) only requires a plaintiff to reasonably expect that an expert is willing to testify, plaintiff's attorney should have known that Dr. Leyrer was not willing to testify against Harnett Health. In determining whether the requirements of Rule 9(j) are met, courts look to "the facts and circumstances known or *those which should have been known* to the pleader at the time of filing." *Preston*, 374 N.C. at 189

(emphasis added). As the pleader's representative, it is the responsibility of plaintiff's attorney to confirm that the selected expert focused on every cause of action in the complaint and is willing to testify regarding each of the claims. "A complaint facially valid under Rule 9(j) may be dismissed if subsequent discovery establishes that the certification is not supported by the facts." *Moore*, 366 N.C. at 31. Here, subsequent discovery revealed that plaintiff's attorney should have known Dr. Leyer was unwilling to testify.

A close reading of the record demonstrates that Dr. Leyer made known his reservations to plaintiff's attorney before either of the complaints were filed. Dr. Leyer testified under oath that he conveyed his opinions to plaintiff's counsel in telephone conversations shortly after being contacted and that his opinions, which did not include any standard of care opinion concerning health care providers other than Dr. Rana, had not changed. Specifically, the deposition transcript of Dr. Leyer reflects the following:

> Q      I take it that you're not offering any standard of care opinions as to any other health care providers other than Dr. Rana; is that correct?
>
> A      That is correct.
>
> Q      So you're not offering any standard of care opinions as to the nurses or any other personnel from the hospital or anyone associated with Carolina Coast Emergency Physicians, LLC; is that correct?
>
> A      That is correct.

Q      And I take it you've never had any such opinions against anyone else other than Dr. Rana prior to today; is that correct?

A      In this case, no.

Q      Is that correct?

A      Yes.

. . . .

Q      Back on the record.
       Dr. Leyrer, in finishing up I just have a few questions for you. I just want to clarify earlier when you were giving us dates you said you were initially contacted about the case at the end of August of 2011 and then after your review of some records you received shortly thereafter you would have had several telephone conversations with [p]laintiff's counsel in September; is that correct?

A      Correct.

Q      And it was during those telephone conferences that you provided your opinions in this case to [p]laintiff's counsel; is that correct?

 A     Correct.

Q      And your opinions have not changed since that time, correct?

A      Correct.

¶ 46      Even in the light most favorable to plaintiff, the record at best demonstrates that any statements made by Dr. Leyrer to plaintiff's counsel indicating that he would testify against Harnett Health referred only to the actions of Dr. Rana, which were

allegedly attributable to Harnett Health through a theory of respondeat superior. In contrast, Dr. Leyrer's subsequent deposition made clear that he never expressed a willingness to testify against Harnett Health for the actions of its nurses. Plaintiff's counsel, as the pleader's representative, bore the responsibility of ensuring Dr. Leyrer was willing to testify to every claim against every defendant. Plaintiff's counsel failed to do so. Therefore, plaintiff cannot meet the standard in *Preston* because plaintiff should have known that Dr. Leyrer was not willing to testify against Harnett Health.

¶ 47 Thus, though this case should be remanded to the trial court for a proper application of Rule 9(j), even under a reasonable expectation standard, plaintiff's attorney should have known that Dr. Leyrer was not willing to testify.

## B. Rule 702 of the North Carolina Rules of Evidence

¶ 48 Furthermore, regardless of the Rule 9(j) issue, the Court of Appeals applied the wrong standard of review to the trial court's exclusion of Dr. Harris[1] pursuant to Rule 702(a).[2] Rule 702(a) provides that:

---

[1] While the trial court excluded the testimony of both Dr. Leyrer and Dr. Harris, the trial court's exclusion of Dr. Leyrer is not before this Court.

[2] This Court only allowed review of two of the issues listed in Harnett Health's Petition for Discretionary Review:

> Issue I – Did the Court of Appeals err in affirming the trial court's order denying Harnett Health's Motion to Dismiss pursuant to Rule 9(j) of the North Carolina Rules of Civil Procedure when [plaintiff's] Rule 9(j) expert testified that he had never been critical of Harnett Health; and,

> (a)  If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion, or otherwise, if all of the following apply:
>
>> (1)  The testimony is based upon sufficient facts or data.
>>
>> (2)  The testimony is the product of reliable principles and methods.
>>
>> (3)  The witness has applied the principles and methods reliably to the facts of the case.

N.C.G.S. § 8C-1, Rule 702(a) (2021).

¶ 49        In ruling on plaintiff's motion to exclude Dr. Harris, the trial court found and concluded that:

> Dr. Harris did not review the plaintiff's handwritten notes, certain EMT records, or certain prior medical records before forming his opinions in this case. Additionally, he had not reviewed the documents prior to his depositions. Further, he has not rendered any causation opinions considering the events and actions as set forth [in] those documents. Therefore, he is unqualified under Rule 702(a) to render an opinion in this case. Furthermore, I find that because Dr. Harris has not sufficiently demonstrated

---

Issue II – Did the Court of Appeals err in applying a de novo standard of review instead of an abuse of discretion standard in its exclusion of Dr. Harris.

However, this Court did not allow review of the additional issues in the petition, including whether "the Court of Appeals err[ed] in reversing the trial court's exclusion of Dr. Harris under Rules 702(a) and 702(b) of the North Carolina Rules of Evidence." Thus, to the extent the majority affirms the outcome of the Court of Appeals' Rule 702 analysis, it addresses an issue not properly before this Court.

through his depositions or affidavits that he is familiar with the local standards at the time of this incident as required by N.C.[G.S.] § 90-21.12, he is not qualified to render standard of care opinions in this case.

¶ 50 Yet in this case, the Court of Appeals' analysis did not address why the trial court's conclusion on Rule 702(a) was manifestly unsupported by reason. Nor did it conclude that no evidence supported the trial court's finding. Instead, the Court of Appeals appears to have conducted a de novo review and reached its own conclusion.

As the trial court excluded Dr. Harris because he had not reviewed [p]laintiff's notes, Decedent's EMT records, and Decedent's "certain prior medical records," it would appear the trial court concluded Dr. Harris could not satisfy Rule 702(a)(1)'s requirement [that] his testimony be based on sufficient facts or data. [A]s a general rule, questions relating to the bases and sources of an expert's opinion affect only the *weight to be assigned* that opinion rather than its *admissibility*.

. . . . Dr. Harris examined the medical records from Harnett Health for the two hospital visits in question as well as at least some of Decedent's prior medical records. In fact, Dr. Harris was familiar with Decedent's medical history and certain medical conditions relevant to his care on the days in question. Therefore, the trial court misapplied Rule 702(a) by concluding Dr. Harris's opinions were not based on sufficient data when his opinions were supported by evidence in the Record. Consequently, the trial court erred in concluding Dr. Harris's opinions were inadmissible and, instead, questions as to the weight to be given to his opinions should be resolved by a jury.

*Miller*, ¶¶ 79–80 (cleaned up).

¶ 51 By freely substituting its own interpretation of the evidence, rather than

determining if the trial court's interpretation of the evidence and the conclusions drawn from it were manifestly unsupported by reason or that there was no evidence to support the trial court's finding, the Court of Appeals failed to apply a true abuse of discretion analysis. *See State v. Moore*, 245 N.C. 158, 164 (1956) ("[T]his Court has uniformly held that the competency of a witness to testify as an expert is a question primarily addressed to the [trial] court, and his discretion is ordinarily conclusive, that is, unless there be no evidence to support the finding, or unless the judge abuse[d] his discretion.").

## II.    Conclusion

The legislature has established specific requirements around the filing of a medical malpractice suit to preclude frivolous actions. *See Vaughan v. Mashburn*, 371 N.C. 428, 434–35 (2018). It is the duty of this Court to uphold those requirements, in accordance with the text the legislature chose to enact. *See State v. Bell*, 184 N.C. 701, 705 (1922) ("Scrupulously observing the constitutional separation of the legislative and the supreme judicial powers of the government, we adhere to the fundamental principle that it is the duty of the Court, not to make the law, but to expound it, and to that end to ascertain and give effect to the intention of the Legislature . . . .").

The second requirement of Rule 9(j) is clear: at the time of filing, a plaintiff must have secured an expert willing to testify that each defendant health care

provider breached the statutory standard of care. That requirement does not depend on a plaintiff's reasonable expectation. The trial court and Court of Appeals failed to properly apply that requirement. Thus, this case should be remanded to the trial court for a proper application of Rule 9(j).

The Court of Appeals also applied the wrong standard of review to the trial court's decision to exclude Dr. Harris pursuant to Rule 702(a), violating this Court's "uniform[ ]" holdings that abuse of discretion applies. *See Crocker v. Roethling*, 363 N.C. 140, 143 (2009). As a result, I respectfully dissent.

Chief Justice NEWBY and Justice BERGER join in this dissenting opinion.